[No. B208189. Second Dist., Div. Three. Dec. 23, 2009.]

PARK 100 INVESTMENT GROUP II, LLC, Plaintiff and Respondent, v. GREGORY R. RYAN et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part IV.B.3.

## COUNSEL

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Bartley L. Becker and Barry Zoller for Defendants and Appellants.

Freedman & Taitelman, Bryan J. Freedman, Jacqueline C. Brown and Bradley H. Kreshek for Plaintiff and Respondent.

## OPINION

**ALDRICH, J.—**

### I.

### INTRODUCTION

Defendants in this case are attorneys who, in the course of representing a real property owner in a prior lawsuit involving an easement dispute, filed a lis pendens on a dominant tenement. The owners of the dominant tenement turned around and, in the present case, sued the attorneys, claiming the lis pendens was wrongfully recorded. The attorneys appeal from the denial of their anti-SLAPP motion (Code Civ. Proc., § 425.16).[1]

In the published portions of this opinion, we hold that it is proper to record a notice of pendency of action, commonly called a lis pendens, on a dominant tenement when the litigation is an easement dispute. In the unpublished portion of this opinion, we hold that the attorneys are not foreclosed by the

---

[1] "SLAPP is an acronym for strategic lawsuit against public participation. [Citation.]" (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1283, fn. 4 [74 Cal.Rptr.3d 873].)

doctrine of collateral estoppel from addressing the validity of the lis pendens. We reverse the trial court's order denying the attorneys' anti-SLAPP motion and direct the court to enter an order granting the motion.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Underlying facts.*

The Oviatt Building is a historic building built on a parcel of real property located at 617 South Olive Street, in downtown Los Angeles (the Oviatt property). The Oviatt property is immediately south of, and adjacent to, the Heron Building located at the corner of 6th Street and Olive Street at 510 West 6th Street, Los Angeles. There is an alley between the two buildings. This 15-foot private alleyway lies on the real property upon which the Heron is built (the Heron property).

At the rear of the Oviatt Building, in the alley, is a large, stationary trash compactor as well as a number of large trash receptacles that serve the building and its tenants. By virtue of the manner in which the Oviatt Building was permitted to be constructed, there is nowhere else to place the trash receptacles or the compactor other than in the alley. Further, the only way the Oviatt property owners and tenants and the Oviatt Building's waste removal company can access the large trash compactor and receptacles is through the alley. Thus, if the Oviatt Building did not have access to the alley, it could not service the needs of the building and its tenants.

In October 1985, the owners of the two properties entered into a 10-year contract by which the owners of the Oviatt property could use the alley. This easement contract called for a one-time payment of $12,500 and the installation of a gate. It did not require the payment of a monthly fee. Even though the nonexclusive easement stated it was to be used only in the case of an emergency, the Oviatt property owners used the easement for other purposes, including access to the Oviatt Building's trash bins.

The Oviatt property is the dominant tenement, as the easement attaches to its property. Because the easement burdens the Heron property, it is the servient tenement.[2]

---

[2] *Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1599 [59 Cal.Rptr.3d 527]; Civil Code section 803 ("The land to which an easement is attached is called the dominant tenement; the land upon which a burden or servitude is laid is called the servient tenement.").

The Oviatt property owners continued to use the easement after the easement contract expired in October 1995.

In December 2003, plaintiff and respondent Park 100 Investment Group II, a limited liability company (Park 100) purchased the Oviatt property. (Park 100 was formerly known as the Oviatt Investment Group, LLC.) For ease of reference, hereinafter, we refer to Park 100 as Oviatt.

Sixth & Olive, Inc., owns the Heron property. For ease of reference, hereinafter, we refer to 6th & Olive as Heron.

Defendants and appellants are Gregory R. Ryan and Wayne B. Brosman. They are the attorneys who represented Heron in 2005. In June and July 2005, Attorney Brosman wrote to Oviatt threatening to deny all access to the alley if a new easement agreement was not agreed upon. The owners of the two properties could not come to a consensus as to the terms of a new easement agreement.

In January 2006, the Oviatt property was marketed for sale. Its estimated value was between $15 and $19 million.

In February 2006, Attorney Brosman wrote to Oviatt requesting payment of $116,000 for the use of the alley from May 1996 through February 2006, and the payment of $1,000 per month beginning in March 2006. Attorney Brosman mailed a copy of the letter to the listing broker who was handling the sale of the Oviatt property.

Oviatt received several offers. In February 2006, Oviatt entered into negotiations with JMF Development for the sale of the property for $16.9 million. By March 2006, Oviatt and JMF Development had agreed to a purchase and sale agreement.

In March 2006, Oviatt rejected Attorney Brosman's demand to enter into a new easement agreement. Oviatt informed Attorney Brosman by e-mail that it had the right to use the easement pursuant to a prescriptive easement and pursuant to a covenant running with The Heron Building's land, recorded in 1985. Oviatt also notified Attorney Brosman that the Oviatt property was on the market, and warned that there could be liability if Heron falsely stated that Oviatt could not use the alley.

B. *The quiet title action (case No. BC349120).*

1. *The complaint, lis pendens, and expungement of the lis pendens.*

It appears that in March 2006, Heron prevented Oviatt from using the alley to access its trash receptacles and compactor.

On March 16, 2006, Attorneys Ryan and Brosman filed a verified complaint in *6th and Olive Inc. v. Oviatt Investment Group LLC* (Super. Ct. L.A. County, No. BC349120) (petn. pending) to quiet title on behalf of Heron against Oviatt.[3] In its one cause of action to quiet title, Heron sought to establish that there was no easement on its property "except for an easement for pedestrian egress from a fire escape at the rear of the Oviatt Building, for emergency fire, life or safety circumstances."

On March 20, 2006, Attorneys Ryan and Brosman recorded a notice of pending action (a lis pendens) against *both* properties.

Two days later, on March 22, 2006, JMF Development notified Oviatt by e-mail that it was withdrawing from the sales agreement because "1. The ongoing litigation of the Heron and the filing of the Lis [Pendens] could potentially drag out a closing date which would not work in terms of my acquisition criteria. [¶] 2. I was unaware that there was no [conditional use permit] for the rooftop Space and the [absence] of the rooftop income would be detrimental to the business model. [¶] [T]hese two unforeseen issues make the purchase [too] risky."

On May 5, 2006, Oviatt filed a verified cross-complaint and filed a lis pendens only with regard to the Heron property.

On May 30, 2006, Oviatt filed a motion to expunge the lis pendens that had been recorded on its property. Among other grounds, Oviatt alleged that the quiet title action did not involve title or the right to the Oviatt property (the dominant tenement).

At the hearing on the motion to expunge, *both* counsel informed the trial court that there was *no legal authority* addressing whether a lis pendens could reference the dominant tenement in an easement dispute.

In a June 21, 2006 four-page ruling, the Honorable Rolf M. Treu granted the motion to expunge, concluding the litigation did not involve title or possession of the Oviatt property and, hence, there was no real property claim justifying a lis pendens on that property. Judge Treu determined he would suspend any award of attorney fees and costs, pending further action. On June 26, 2006, Judge Treu entered an order expunging the lis pendens that had been recorded against the Oviatt property.

---

[3] The named defendant in the lawsuit was Oviatt Investment Group, LLC, previously known as La Cienega Investment Group, LLC, and subsequently known as Park 100 Investment Group II, LLC.

On August 4, 2006, Oviatt amended its previously filed verified cross-complaint that still sought to quiet title in the claimed prescriptive easement. The cross-complaint also alleged causes of action for intentional interference with economic advantage and slander of title based on the allegation that the filing of the lis pendens on Oviatt's property was wrongful and caused Oviatt to lose the sale of its property. Oviatt further alleged that the lis pendens was used as a means to extort over $116,000 from Oviatt and force Oviatt to enter into a new easement agreement.

### 2. The overruling of Heron's demurrer.

Arguing it was absolutely privileged (Civ. Code, § 47) to record the lis pendens on the Oviatt property, Heron demurred to the intentional interference with prospective economic advantage and slander of title causes of action in Oviatt's amended cross-complaint. On October 12, 2006, Judge Treu overruled the demurrer citing his June 2006 expungement order and indicating that Heron had not stated a real property claim and, thus, the recordation of the lis pendens was improper.

In October 2006, Oviatt filed a motion for sanctions against Attorneys Brosman and Ryan for filing the demurrer. Attorneys Ryan and Brosman argued that Heron had the right to file a lis pendens on a dominant tenement in an easement dispute and argued that the prior rulings on this issue were erroneous. Attorneys Ryan and Brosman asked Judge Treu to reconsider his prior ruling in light of *Kendall-Brief Co. v. Superior Court* (1976) 60 Cal.App.3d 462 [131 Cal.Rptr. 515] (*Kendall-Brief*) and *Woodridge Escondido Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559 [30 Cal.Rptr.3d 15] (*Woodridge*). Judge Treu declined to reconsider his prior ruling, but denied the sanction request, concluding that the attorneys had a colorable argument in suggesting it was permissible to file a lis pendens on the Oviatt property, i.e., the dominant tenement.

### 3. The denial of Heron's motion for summary adjudication.

On November 22, 2006, Heron filed a motion for summary adjudication of the intentional interference with prospective economic advantage and slander of title causes of action in Oviatt's first amended cross-complaint. Heron argued that an easement is a property interest that affects two separate parcels of real property, such that a lis pendens may be recorded on *both* parcels, the dominant and servient tenements. Among other authority, Heron cited *Kendall-Brief, supra,* 60 Cal.App.3d 462 and *Woodridge, supra,* 130

Cal.App.4th 559. Thus, Heron suggested the lis pendens was privileged and not actionable. Heron noted that at the hearing on the expungement motion, both counsel made a misstatement of the law, as both were unaware of *Kendall-Brief* and *Woodridge*.

In opposing the motion for summary adjudication, Oviatt did not argue that the authority presented by Heron was not controlling. Rather, Oviatt contended the expungement order conclusively established that the lis pendens was wrongfully recorded and not privileged, and the trial court could not make rulings inconsistent with its prior rulings. Oviatt also argued Heron could not use summary adjudication as a substitute for a reconsideration motion.

The trial court denied Heron's motion for summary adjudication.

In October 2007, the Oviatt property was sold for $13.5 million.

On January 22, 2008, Oviatt abandoned its claim for a prescriptive easement through its request to quiet title, thereby leaving only the intentional interference with prospective economic advantage and slander of title causes of action.

C. *This litigation (case No. BC385309).*

On February 11, 2008, Oviatt filed a complaint (case No. BC385309) against Attorneys Ryan and Brosman. Oviatt asserted three causes of action: (1) intentional interference with prospective economic advantage; (2) negligent interference with economic advantage; and (3) slander of title. The gravamen of the complaint was that the recording of the lis pendens on the Oviatt property (the dominant tenement) in case No. BC349120 was improper.

Attorneys Ryan and Brosman filed an anti-SLAPP motion pursuant to Code of Civil Procedure section 425.16. They argued Oviatt could not prevail on its complaint because the complaint was barred by the litigation privilege (Civ. Code, § 47, subd. (b)), the lis pendens was properly recorded against the Oviatt property, and the interim rulings in the quiet title case were not binding in this lawsuit filed by Oviatt.

Oviatt opposed the anti-SLAPP motion arguing (1) the rulings by Judge Treu in the quiet title action established that the lis pendens was improperly recorded, and these rulings were binding in the present case; and (2) Civil Code section 47, subdivision (b) expressly excluded an improperly recorded lis pendens from the litigation privilege. Oviatt further contended that it had a reasonable probability of prevailing on its case against Attorneys Ryan and Brosman because the lis pendens was properly expunged in case No. BC349120.

The trial court, the Honorable Charles C. Lee, denied the anti-SLAPP motion.

Attorneys Ryan and Brosman appealed from the denial of their anti-SLAPP motion. We reverse.

## III.

## SUMMARY

We hold that Attorneys Ryan and Brosman met their burden to establish that the challenged action of filing the lis pendens on the Oviatt property arose from protected activity. We further hold that Oviatt cannot meet its burden to demonstrate a probability of prevailing on its claim because in an easement dispute, a lis pendens may be recorded on the dominant tenement— here, the Oviatt property.

## IV.

## DISCUSSION

### A.  *Motions to strike under Code of Civil Procedure section 425.16.*

The Legislature enacted Code of Civil Procedure section 425.16 in an effort to curtail lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., § 425.16, subd. (a).) Code of Civil Procedure section 425.16 provides in part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection

with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

As pertinent here, Code of Civil Procedure section 425.16, subdivision (e) states that an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding, or any other official proceeding authorized by law; [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law . . . ."

██ Pursuant to Code of Civil Procedure section 425.16, the party moving to strike has the initial burden of establishing that the challenged cause of action arises from protected activity. Then, the burden switches to the plaintiff to demonstrate a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703]; *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].)

We review an order granting an anti-SLAPP motion de novo and, therefore, we conduct an independent review of the entire record. (*Governor Gray Davis Com. v. American Taxpayers Alliance, supra*, 102 Cal.App.4th at p. 456; *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1544 [33 Cal.Rptr.3d 145].)

B.   *Filing the lis pendens was protected activity.*

The first step in the analysis is to determine if Attorneys Ryan and Brosman made a threshold showing that the challenged act of filing the lis pendens in case No. BC349120 is one arising from protected activity. (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 88.)

1.   *A lis pendens is protected activity.*

██ Communications in connection with matters related to a lawsuit come within the scope of the litigation privilege and are acts arising from this protected activity. (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1056 [18 Cal.Rptr.3d 882].) "The filing of a notice of lis pendens falls squarely within [Code of Civil Procedure section

425.16's definition of a protected activity]. [Citations.]" (*Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040, 1050 [93 Cal.Rptr.3d 457]; accord, *Salma v. Capon, supra,* 161 Cal.App.4th at p. 1285 [the "filing of the notice of lis pendens in superior court and the naming of . . . lenders as defendants in his lawsuit were writings made in a judicial proceeding. They are squarely covered by section 425.16, subdivision (e)(1)"].)

### 2. *The lis pendens was not illegal as a matter of law.*

■ Oviatt suggests Attorneys Ryan and Brosman failed to meet their burden to show that the act of filing the lis pendens in case No. BC349120 arose from protected activity because the activity was illegal as a matter of law. Oviatt cites *Flatley v. Mauro* (2006) 39 Cal.4th 299 [46 Cal.Rptr.3d 606, 139 P.3d 2] for this proposition. In *Flatley,* the defendant attorney's criminal acts of sending letters and making telephone calls to extort money were deemed not protected by Code of Civil Procedure section 425.16. (*Flatley v. Mauro, supra,* at pp. 305, 333.) *Flatley* held that where "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Id.* at p. 320.) *Flatley* emphasized that in the examination of the first prong of the anti-SLAPP analysis, an activity was not protected as a matter of law only when the evidence *conclusively* established the illegality. Otherwise, it was an issue to be addressed when the plaintiff was called upon to provide a prima facie showing of the merits of the case. (*Id.* at pp. 319–320.) *Flatley* does not assist Oviatt.

■ An illegal act is one that is forbidden by law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 283 [46 Cal.Rptr.3d 638, 139 P.3d 30].) Even if a lis pendens is not appropriate under the circumstances, it is not an illegal act forbidden by law. (E.g., *Manhattan Loft, LLC v. Mercury Liquors, Inc., supra,* 173 Cal.App.4th 1040–1050 [defendants' conduct in filing lis pendens was protected activity even if the lis pendens was invalid, as it did not refer to a pending lawsuit, but referred to arbitration proceedings; thus, even if a lis pendens was not properly filed, the defendants met their burden of showing that the act of filing the lis pendens was protected activity].) Additionally, as we discuss below, the filing of the lis pendens here was authorized by law.

In the unpublished portion of this opinion, we find unpersuasive Oviatt's contention that the rulings in case No. BC349120 (the expungement order, the overruling of the demurrer and the denial of the motion for summary adjudication) conclusively establish that the filing of the lis pendens was illegal as a matter of law. This finding rejects Oviatt's collateral estoppel argument.

3. *The doctrine of collateral estoppel does not apply here.*<sup>*</sup>

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. *Attorneys Ryan and Brosman met their burden.*

As stated above, we have found unpersuasive Oviatt's argument that the lis pendens in case No. BC349120 was illegal as a matter of law. Also, we have concluded (in the unpublished portion of this opinion) that Attorneys Ryan and Brosman are not foreclosed by the doctrine of collateral estoppel from addressing the validity of the lis pendens. Thus, Attorneys Ryan and Brosman have met their burden of establishing that the act of filing the lis pendens arises from protected activity. The burden now shifts to Oviatt to demonstrate a probability of prevailing on the claim.

C. *Oviatt cannot meet its burden to demonstrate a probability of prevailing on its claims.*

In this litigation, Oviatt asserted three causes of action against Attorneys Ryan and Brosman: (1) intentional interference with prospective economic advantage; (2) negligent interference with prospective economic advantage; and (3) slander of title. All are based on the argument that the filing of the notice of pendency of action in case No. BC349120 was improper. This argument is premised upon Oviatt's contention that it was improper for Attorneys Ryan and Brosman to file the lis pendens on the Oviatt property, which is the dominant tenement. Oviatt's analysis fails because a lis pendens can be recorded against a dominant tenement in an easement dispute.

1. *The lis pendens statutory scheme.*

" 'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice.' [Citation.]" (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647 [15 Cal.Rptr.3d 805, 93 P.3d 395].)

---

<sup>*</sup>See footnote, *ante*, page 795.

California's notice of pendency of action, or lis pendens, scheme is codified in Code of Civil Procedure section 405.1 et seq. Section 405.1 states, " 'Claimant' means a party to an action who asserts a real property claim and records a notice of the pendency of the action." The purpose of this section is to "clarify that the party recording a lis pendens must be a party asserting a Real Property Claim as defined in [Code of Civil Procedure section] 405.4." (Code Com., 14A West's Ann. Code Civ. Proc. (2004 ed.) foll. § 405.1, p. 312.) Pursuant to Code of Civil Procedure section 405.4, a " '[r]eal property claim' means the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property or (b) the *use of an easement* identified in the pleading, other than an easement obtained pursuant to statute by any regulated public utility." (Italics added.) This definition is consistent with the definition found in Code of Civil Procedure section 405.2: " 'Notice of pendency of action' or 'notice' means a notice of the pendency of an action in which a real property claim is alleged."

█ Parties to an action asserting "a real property claim may record a notice of pendency of action in which that real property claim is alleged." (Code Civ. Proc., § 405.20.) Parties and nonparties "with an interest in the real property affected thereby, may apply to the court in which the action is pending to expunge the notice." (Code Civ. Proc., § 405.30.) Courts "shall order the notice expunged if the court finds that the pleading on which the notice is based does not contain a real property claim." (Code Civ. Proc., § 405.31.) Further, if a real property claim has been pled and as pled lacks evidentiary merit, the lis pendens shall be expunged. (*Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1377–1378 [1 Cal.Rptr.3d 116].) As stated in Code of Civil Procedure section 405.32, "the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim."

"In making [determination as to whether a real property claim is being asserted], the court must engage in a demurrer-like analysis. 'Rather than analyzing whether the pleading states any claim at all, as on a general demurrer, the court must undertake the more limited analysis of whether the pleading states a real property claim.' (Code com., 14A West's Ann. Code Civ. Proc., *supra*, foll. § 405.31, at p. 342.) Review 'involves only a review of the adequacy of the pleading and normally should not involve evidence from either side, other than possibly that which may be judicially noticed as

on a demurrer.' (Code com., 14A West's Ann. Code Civ. Proc., *supra*, foll. § 405.30, at p. 337.) Therefore, review of an expungement order under section 405.31 is limited to whether a real property claim has been properly pled by the claimant. (Code com., 14A West's Ann. Code Civ. Proc., *supra*, foll. § 405.31, at p. 342.)" (*Kirkeby v. Superior Court, supra*, 33 Cal.4th at pp. 647–648.)

When a lis pendens has been expunged, the claimant may record another notice of pendency of action only with leave of court. (Code Civ. Proc., § 405.36.) An order expunging a lis pendens is not appealable, but must be challenged by petition for writ of mandate. (Code Civ. Proc., § 405.39.)

### 2. *An easement dispute is a real property claim that affects the title and right to possession of dominant tenement properties.*

In *Kendall-Brief, supra*, 60 Cal.App.3d 462, owners of lots adjacent to a parcel owned by developer Kendall-Brief Company sought to restrain the developer from using a private road (an easement) located on their property. The owners filed a quiet title lawsuit and recorded a lis pendens against both parcels of property seeking to restrain the developers' use of the easement. The developer filed a motion to expunge the lis pendens as to its property, noting that it was the dominant tenement and the easement was located on the adjacent lots. When the expungement motion was denied, the developer requested the court of appeal to issue a writ of mandate. (*Id.* at pp. 464–465.)

The appellate court framed the issue before it as: "The primary issue for decision is whether the existence or nonexistence of an easement of right-of-way over a servient tenement affects title to or right of possession of the dominant tenement." (*Kendall-Brief, supra*, 60 Cal.App.3d at p. 464.) *Kendall-Brief* stated that the "test to be applied is whether the main action, involving the existence of an easement of right-of-way over the servient tenement, affects the title or right of possession of the dominant tenement." (*Id.* at p. 467.) *Kendall-Brief* asserted that although the title to the owners' dominant tenement would not be directly affected if an easement right was shown to exist, the owners' right to possession clearly would be affected, as access to the property would be impaired. The appellate court went on to conclude that an easement dispute did affect the title or right of possession of the dominant tenement: "Although title to the dominant tenement would not be affected if petitioner were to suffer an adverse result in the main action, the right of possession of the real property definitely would be affected inasmuch as access to such property would seriously be impaired. In our view, 'right of possession' encompasses more than mere ownership of a lot in a land-locked subdivision; it includes the right to have access to and to occupy such property." (*Id.* at p. 468.)

Five years later, *Woodcourt II Limited v. McDonald Co.* (1981) 119 Cal.App.3d 245 [173 Cal.Rptr. 836] (*Woodcourt*) was decided. In *Woodcourt*, the appellate court held that a notice of a lis pendens was made in the course of a judicial proceeding, and was privileged pursuant to Civil Code section 47.

Oviatt recognizes that the definition of a "real property claim" in Code of Civil Procedure section 405.4 includes the use of an easement. Oviatt argues, however, that this definition should be limited to permit (1) the recording of a lis pendens on the servient tenement or (2) the recording of a lis pendens on the dominant tenement only when the dispute involves a landlocked piece of property, as in *Kendall-Brief, supra,* 60 Cal.App.3d 462. Thus, Oviatt asserts the lis pendens filed on its property in case No. BC349120 was improper. However, this argument fails to recognize that even where a parcel is not landlocked, the lack of access to an easement can have devastating effects. The dominant tenement's title is affected, as the easement carries with it the right to use the servient tenement. For example, here, if Oviatt was unsuccessful in its battle with Heron, Oviatt would lose the use of the easement, thereby severely restricting the use of Oviatt's property. In Oviatt's verified cross-complaint, Oviatt admitted that the use of the alley affected its property by stating that if it was excluded from using the alley, it would not be able to service its trash needs. Therefore, Oviatt's right to use the easement is a right of possession encompassing its right to have access to, and occupy, the Heron property.[4]

Further, Oviatt's interpretation of the present statutory scheme is contrary to the legislative history and the conclusions of those who have examined the statute. The legislative history and respected treatises consistently state that *Kendall-Brief*'s holding was codified in the 1992 amendments to Code of Civil Procedure sections 405.4 and 405.20. This change in the law was intended to include within the definition of a "real property claim" a lis pendens recorded on either the dominant or servient tenements in an easement dispute, i.e., the use of an easement *upon or appurtenant to* the property affected by the action.

---

[4] In presenting its argument below, Heron cited to *Woodridge, supra,* 130 Cal.App.4th 559. In *Woodridge*, a homeowner had a side yard easement over the adjoining property of his neighbor. The easement prohibited the dominant tenement from installing most permanent structures on the easement. (*Id.* at p. 563.) The homeowners association filed a lis pendens on the homeowner's property in conjunction with its lawsuit against the homeowner for declaratory and injunctive relief after the homeowner refused to remove a deck he had built that encroached upon the easement. The trial court granted the homeowner's motion to expunge the lis pendens filed on his dominant tenement. (*Id.* at pp. 564–565.) Before *Woodridge* addressed the issues before it, the appellate court noted that, in an unpublished opinion filed the prior year, the same appellate court had held that "the association was entitled to writ relief because [the association] had asserted a 'real property claim' against [the homeowner] . . . ." (*Id.* at p. 566.)

The 1992 amendments to Code of Civil Procedure sections 405.4 and 405.20 codified proposals made by the Real Property Law Section of the State Bar of California after a two-year study. These amendments comprehensively revised the lis pendens statutes. (Jablon, Proposed New Lis Pendens Law with California Code Comments, 9 Cal. Real Property J. No. 3 (Summer 1991) p. 31 (hereafter Section report); Legis. Counsel's Dig., Assem. Bill No. 3620 (1991–1992 Reg. Sess.) 4 Stats. 1992, Summary Dig., ch. 883, p. 365; Assem. Com. on Judiciary, com. on Assem. Bill No. 3620 (1991–1992 Reg. Sess.) as amended Apr. 29, 1992.) As stated in the Section report, the new law was intended to codify the holdings in *Kendall-Brief* and *Woodcourt.* The Section report stated in part: "Prior statutory law was not clear regarding the availability of the lis pendens procedure in cases involving easements. An easement does not technically 'affect' title in the sense of changing it, nor does the existence of an easement oust the title holder of possession. Nevertheless, California title insurance practice treats an easement as both an insurable interest and an exception to title. This state of law and practice created confusion regarding the availability of the lis pendens procedure in cases involving easements. See *Kendall-Brief Co. v. Superior Court*[, *supra*,] 60 Cal.App.3d 462 and *Woodcourt II Limited v. McDonald Co.*[, *supra*,] 119 Cal.App.3d 245. [¶] This section expressly includes cases affecting the use of easements within the definition of 'Real Property Claim.' Use of this definition in [Code of Civil Procedure section] 409.210 ('Notice of pending action, required comments, recordation') thus expressly makes the lis pendens procedure available in all cases which affect the use of an easement *upon or appurtenant to* the property affected by the action." (Section report, *supra*, at p. 32, italics added; see also Code Com. 1, Deering's Ann. Code Civ. Proc. (2009 supp.) foll. § 405.4, p. 142.)

Further, pertinent references in the statutory history discussing the Legislature's intent in enacting the 1992 amendments to Code of Civil Procedure section 405.4 to include disputes over easements in the definition of a "real property claim" do not make the distinction urged by Oviatt. Documents in the legislative history make no distinction between those lis pendens placed on a dominant or a servient tenement. Nor do treatises make the distinction Oviatt urges.

The reports submitted to the Legislature discuss all easements. For example, a report to the Assembly Committee on the Judiciary stated that the new amendments were "intended to resolve any confusion by recognizing that lis pendens are available in cases involving easements." (Assem. Com. on Judiciary, com. on Assem. Bill No. 3620 (1991–1992 Reg. Sess.) as amended Apr. 29, 1992, p. 5; accord, Sen. Com. on Judiciary, com. on Assem. Bill No. 3620 (1991–1992 Reg. Sess.) as amended Apr. 29, 1992, p. 6.)

Treatises on the subject agree that the pertinent statutes presently codify *Kendall-Brief*'s holding and these treatises do not state that such codification was limited to permitting a lis pendens on the dominant easement when there is a landlocked parcel of property. Witkin states: "The *Kendall-Brief Co.* holding was codified in 1992. [Code of Civil Procedure sections] 405.4 and 405.31, read together, provide that an expungement motion premised on the failure to plead a real property claim may be successfully resisted by showing that the action was based on a pleading that would affect the use of an easement identified in the pleading (other than an easement obtained pursuant to statute by any regulated public utility)." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 401, p. 509.) Miller and Starr cite Code of Civil Procedure section 405.4, *Kendall-Brief, supra*, 60 Cal.App.3d 462, and *Woodcourt, supra*, 119 Cal.App.3d 245, and state: "There are numerous types of actions that may include a real property claim and therefore may be appropriate for the recordation of a lis pendens [such as, a]ctions regarding easements, including an action to establish an easement, to enforce the claimant's rights under an easement, or affecting the use of an easement, but excluding the right of use of an easement obtained pursuant to statute by a regulated public utility." (5 Miller & Starr, Cal. Real Estate, Recording & Priorities (3d ed. 2000) § 11:150, fns. omitted.)

Because a lis pendens affects the use of an easement *upon or appurtenant to* the property affected by the action, as a matter of law, Attorneys Ryan and Brosman were entitled to file, on behalf of Heron, the lis pendens on the Oviatt property, as they were asserting a real property claim. Even though we cannot correct the trial court's expungement order (as it occurred in the prior litigation involving the easement) it cannot be used by Oviatt to establish that there is a probability Oviatt will prevail on its claims in this case against Attorneys Ryan and Brosman for intentional interference with prospective economic advantage and slander of title.

### 3. *Filing the lis pendens on the Oviatt property was privileged and, thus, Oviatt has not met its burden of proof.*

As stated above, *Woodcourt, supra*, 119 Cal.App.3d 245, which had cited *Albertson v. Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], held that a notice of a lis pendens filed in the course of a judicial proceeding was privileged pursuant to Civil Code section 47. Additionally, section 47, subdivision (b)(4) provides an absolute privilege to the filing of the lis pendens in this case. This statute states that "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding, . . . except as follows: [¶] . . . [¶] (4) A recorded lis pendens is not a privileged publication *unless* it identifies an action previously filed with a court of competent jurisdiction which *affects*

*the title or right of possession of real property*, as authorized or required by law." (Italics added.) This exception was added to the statutory scheme in 1992, the same year the Legislature clarified the lis pendens statutes to adopt the holding in *Kendall-Brief, supra*, 60 Cal.App.3d 462. (Stats. 1992, ch. 615, § 1, p. 2739; *Palmer v. Zaklama, supra*, 109 Cal.App.4th at pp. 1377–1379.)[5] "Therefore, if the pleading filed by the claimant in the underlying action does not allege a real property claim, or the alleged claim lacks evidentiary merit, the lis pendens, in addition to being subject to expungement, is not privileged. . . . (See Cal. Lis Pendens Practice [(Cont.Ed.Bar 2d ed. 2001)] § 2.8, pp. 36–37; 5 Miller & Starr, Cal. Real Estate[, *supra*,] § 11:45, pp. 115–119; Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2002) ¶ 11:608, p. 11-99.)" (*Palmer v. Zaklama, supra*, at p. 1380.)

■ Since the filing of the lis pendens on the Oviatt property in case No. BC349120 alleged a real property claim and was privileged, and because Oviatt has made no argument that the lis pendens lacked merit for other reasons, recordation of the lis pendens cannot be the basis for intentional interference with prospective economic advantage or slander of title causes of action, even if Heron acted with malice. ■ (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc., supra*, 122 Cal.App.4th at pp. 1058–1059 [where act is privileged, plaintiff cannot show a probability of prevailing]; *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 843–844 [36 Cal.Rptr.3d 385] [same]; *Albertson v. Raboff, supra*, 46 Cal.2d at pp. 378–382; *Woodcourt, supra*, 119 Cal.App.3d at pp. 249–251; *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740] [to plead intentional interference with prospective economic advantage, defendant had to engage in some act that was wrongful by some measure other than the fact of interference itself]; *Palmer v. Zaklama, supra*, 109 Cal.App.4th at pp. 1378–1379; *National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 440 [72 Cal.Rptr.2d 720] [independently wrongful act is required to prove negligent interference with prospective economic advantage]; *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 738 [151 Cal.Rptr. 206].)

The trial court erred in denying the anti-SLAPP motion filed by Attorneys Ryan and Brosman, as they were privileged to file the lis pendens in the prior lawsuit.

---

[5] The 1992 amendment to Civil Code section 47, subdivision (b)(4) was originally enacted as subdivision (b)(3). (Stats. 1992, ch. 615, § 1, p. 2739.) It partially abrogated *Albertson v. Raboff, supra*, 46 Cal.2d 375. (*Palmer v. Zaklama, supra*, 109 Cal.App.4th at pp. 1378–1380.)

## V.

## DISPOSITION

The order is reversed. Costs on appeal are awarded to appellants Gregory R. Ryan and Wayne B. Brosman.

Croskey, Acting P. J., and Kitching, J., concurred.

A petition for a rehearing was denied January 21, 2010.