Filed 10/28/25; on rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| STEVEN C. KIM,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>NEW LIFE OASIS CHURCH et al.,<br><br>      Defendants and Respondents. | B331916<br><br>Los Angeles County<br>Super. Ct. No. BC722458 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Colin Leis and Michelle Williams Court, Judges.  Affirmed in part and reversed in part.

Law Offices of Steven C. Kim & Associates, Steven C. Kim and Gabriel Colorado for Plaintiff and Appellant.

The Milner Firm and Timothy V. Milner for Defendant and Respondent New Life Oasis Church.

Fidelity National Law Group, David B. Owen and Kevin R. Broersma for Defendant and Respondent Bank of Hope.

_____

Three churches went to court, and the ensuing litigation lasted 14 years. (See *Pacific Southwest District of the Church of the Brethren v. Church of the Brethren, Inc.* (June 23, 2014, No. B247729) [nonpub. opn.] (*2014 Opinion*).)

In the beginning, the conflict was about which church owned what land. The dispute evolved. Our controversy today is an offshoot of a branch from the trunk.

The questions we confront concern a deed in trust that attorney Steven C. Kim obtained to secure his fee for services to one of the litigating churches. We decide two legal questions. First, is there issue preclusion? Second, does the litigation privilege insulate Kim's lis pendens from claims for slander of title and abuse of process?

By way of overview, we compress this saga.

Kim represented one church, which gave him a deed of trust to secure the fee it owed him. The trial court ordered that church to convey the burdened property to fulfill a sales contract. Kim's deed on that property was obstructing the sale, and the trial court *expunged* Kim's deed. Kim's client appealed, but the Court of Appeal dismissed the appeal and no one sought review in the Supreme Court. That final judgment was in 2018.

Three days later, Kim brought a new suit—this suit— against the same buyer of the same property. Kim's new case sought a declaration that *his expunged deed was valid and not expunged* and the result in the earlier suit was wrong. The buyer successfully invoked issue preclusion, and Kim now appeals this new defeat. We affirm this preclusion ruling because the 2018

2

final judgment settled the issue.  Kim cannot relitigate the loss of his deed.

That is our first holding.  We rendered that ruling and then granted Kim's petition for rehearing.  Today we vacate our earlier opinion and stick with this same analysis and result.

We reverse, however, on the second point, which was the trial court's later treatment of a cross-complaint against Kim.  Kim recorded a lis pendens to give notice of the litigation involving this property.  The trial court ruled this lis pendens was a slander of title and an abuse of process.  The litigation privilege, however, protected the lis pendens.  The cross-complaint lacked legal validity.

The bottom line thus is a split decision.  We remand for entry of judgment *against* Kim on his complaint and *for* Kim on the cross-complaint against him.

I

This opinion is the seventh appellate decision in this long-running controversy over real property located at 1041 South Oxford Street in Los Angeles.  We sketch the essentials.

The Los Angeles Central Korean Evangelical Church joined, but then separated from, the Church of the Brethren, which is headquartered in Illinois.  We will refer to the Los Angeles church as Central Korean.

Over the years, Kim has always been Central Korean's attorney.

The separation of these two churches entailed deciding which church owned what land.  Our colleagues in Division Four settled this question in their first two appellate opinions about the controversy.  (See *2014 Opinion*, *supra*, B247729; *Central*

*Korean Evangelical Church v. Superior Court* (July 15, 2015, B260831) [nonpub. opn.] (*2015 Opinion*).)

The appellate court ultimately determined Church of the Brethren owned "lot 44" and Central Korean owned "lots 48 and 49." (*2015 Opinion, supra*, B260831.)

Central Korean also had contracted to sell its real property—lots 48 and 49—to a third church: New Life Oasis Church, which we shorten to New Life.

Central Korean reneged on the deal, and New Life sued it for specific performance. The trial court ruled for New Life.

The third and fourth trips to the Court of Appeal determined that (3) Central Korean was not entitled to a writ of supersedeas and (4) Central Korean had to make good on its deal to sell to New Life. This latter decision affirmed the trial court result. (See *New Life Oasis Church v. Central Korean Evangelical Church* (Sept. 17, 2018, B286061) [nonpub. opn.] [recounting denial of 2017 supersedeas writ] (*September 2018 decision*); *New Life Oasis Church v. Central Korean Evangelical Church* (July 16, 2018, B281703) [nonpub. opn.].)

Two further decisions from Division Four decided other aspects of the dispute.

The fifth decision concerned attorney fees. (*New Life Oasis Church v. Central Korean Evangelical Church* (Aug. 20, 2018, B284456) 2018 WL 3968891 [nonpub. opn.].)

The sixth appellate decision, in September 2018, dismissed an appeal by Central Korean. (*September 2018 decision, supra*, B286061.)

The September 2018 decision, in which Kim continued to represent Central Korean, now commands decisive importance.

This decision recounted that New Life had leased church property from Central Korean with an option to purchase. In 2013, Central Korean and its pastor Jang Kyun Park had executed a deed of trust on real property that was the subject of litigation to secure the payment of unpaid attorney fees they owed to attorney Kim. Kim was the beneficiary of this deed, which created a lien on the property. (*September 2018 decision, supra*, B286061.)

Kim's deed of trust and the lien it created are important to this appeal, as will appear.

New Life sued Central Korean and Park for refusing to honor New Life's exercise of the purchase option. The trial court found in favor of New Life on its breach of contract claim and ordered specific performance of the purchase option. (*September 2018 decision, supra*, B286061.)

The September 2018 decision recited that, after the entry of judgment, New Life sought to expunge Kim's deed of trust against the property. New Life alleged that, on the day scheduled for closing, Kim entered an escrow demand of $826,051.06 based on the deed of trust: he was trying to collect his attorney fee. According to New Life, Kim's lien clouded title to the property, thus preventing the parties from closing escrow.

Park and Central Korean (both represented by Kim) opposed New Life's application to expunge Kim's deed of trust. They contended the trial court lacked jurisdiction to order the termination of the deed of trust because Kim was not a party to the action but merely their attorney. (*September 2018 decision, supra*, B286061.)

On October 19, 2017, the trial court ordered that Kim's deed of trust be extinguished and commanded Kim to withdraw

5

his escrow demand.  Central Korean sold the property to New Life on October 30, 2017.  (*September 2018 decision*, *supra*, B286061.)

Kim's deed thus was a direct target of the trial court order, and Kim was the aggrieved victim of the order.

Park and Central Korean appealed this order, but the September 2018 decision determined that neither Park nor Central Korean had standing to appeal.  The Court of Appeal noted Park and Central Korean conceded the appeal dealt with Kim's substantive and independent property rights arising out of the deed of trust.  (*September 2018 decision*, *supra*, B286061.)

The court rejected Park's and Central Korean's claim that extinguishing the lien deprived them of the only means they had to pay Kim for his legal services.  "The deed of trust simply secured Kim's interest in his unpaid attorney fees.  The termination of the deed of trust did not prevent [Park and Central Korean] from using the proceeds from the property sale to pay for the fees owed to Kim.  In fact, [Park and Central Korean] presumably had the funds to satisfy the attorney fees obligation after the property was sold to New Life last year. . . . Kim, as the beneficiary, was the only person who was aggrieved by the order extinguishing his deed of trust."  (*September 2018 decision*, *supra*, B286061.)

The September 2018 decision observed Kim personally could have challenged the expungement order.  "A nonparty who is aggrieved by a judgment or order may become a party of record and obtain a right to appeal by filing a motion to vacate pursuant to Code of Civil Procedure section 663.6 [citations].  The filing of a motion to vacate provides a means by which a nonparty may become a party with a right of appeal without the need to

6

formally intervene in the action.  [Citation.]  The record does not reflect the filing of any such motion in this case." (*September 2018 decision*, *supra*, B286061.)

In other words, only Kim had a direct interest in the appeal.  Kim could have participated but he did not follow the mandatory procedure.  Kim's omission doomed his ability to relitigate this issue.

"We conclude appellants [Park and Central Korean] were not directly aggrieved by the order extinguishing the deed of trust, and Kim failed to secure the right to appeal by pursuing a motion to vacate.  Accordingly, the appeal [by Park and Central Korean] must be dismissed." (*September 2018 decision*, *supra*, B286061.)

The Court of Appeal filed this decision on September 17, 2018.

In the meantime, on April 18, 2018, Bank of Hope made a loan to New Life secured by a deed of trust against the property in question.

On September 20, 2018—just three days after the decision from the Court of Appeal—Kim filed the action that is the subject of this appeal.  As a self-represented plaintiff, Kim sued New Life, seeking a declaration that, contrary to the previous court action, his lien was *valid* and the October 19, 2017 order extinguishing that lien was "rendered without jurisdiction and therefore is of no legal force and effect . . . ."  Kim included a second cause of action for an injunction.  Kim amended to add the Bank of Hope, which by virtue of its aforementioned loan was a lienholder on the property.

Kim attached the deed of trust as an exhibit to his complaint.  Kim is the beneficiary of this deed of trust, and

7

Central Korean is the trustor.  The trustee is an insurance company.  Central Korean granted the property to the trustee "in trust, with power of sale . . . ."

Kim's deed specified that "upon default by [his client Central Korean] in payment of any indebtedness secured hereby . . . , [Kim] may declare all sums secured hereby immediately due and payable . . . ."  After due notice, the trustee "shall sell such property . . . at public auction to the highest bidder."  The trustee shall apply the net proceeds of the sale to payment "of all sums expended under the terms hereof . . . ."

In short, the deed allowed Kim to foreclose on the property, to cause it to be sold, and to recover his attorney fee from the sale proceeds.

Kim recorded a lis pendens against this property.

In response to Kim's suit, New Life filed a cross-complaint against him, alleging his lis pendens was a slander of title and an abuse of process.

New Life and Bank of Hope moved for judgment on the pleadings.  The trial court granted this motion without leave to amend.  The court reasoned, in part, that the doctrine of collateral estoppel barred Kim's effort to relitigate the lien question.

Kim filed a trial brief arguing the litigation privilege protected his recording of the lis pendens.

On October 25 and 26, 2022, the court held a bench trial on New Life's cross-complaint.  The court ruled for New Life.  It awarded it $277,821.90 in compensatory damages against Kim.

The trial court's statement of decision did not address the topic of the litigation privilege.  This privilege was Kim's primary defense to the cross-complaint.

8

When the dust settled in the trial court, Kim had lost entirely.  He alone appealed.

II

We begin with the doctrine of preclusion.  This doctrine aims to prevent a dispute resolved in one case from being relitigated in a later case.  Courts now refer to *claim preclusion* rather than *res judicata*, and to *issue preclusion* rather than *collateral estoppel*.  Issue preclusion prevents relitigation of previously decided issues and applies only (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party. (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.)

We review this question independently.  There are no facts in dispute.

The trial court correctly found that earlier litigation precluded relitigation of the lien question.  On October 19, 2017, a trial court decided the lien was invalid.  The court also ordered Kim to withdraw his escrow demand so the sale to New Life could proceed.  Park and Central Korean appealed that decision, but the appellate court dismissed their appeal because they lacked standing.  Kim could have appealed the issue by filing a motion to vacate, but he never took this step.  No one sought review in the Supreme Court.  That case is over.  The judgment is final.

The lien issue was actually litigated and necessarily decided in the earlier suit.  The court ordered Kim to take action in that suit consistent with its finding he had no lien rights in the property.

9

The issue was asserted against one who was in privity with a party to the first suit: Kim was in privity with his client Central Korean.

Kim protests he was *not* in privity with Central Korean. To support this claim, Kim cites *Kerner v. Superior Court* (2012) 206 Cal.App.4th 84 (*Kerner*). As New Life points out, the *Kerner* decision destroys rather than assists Kim's position. In *Kerner*, Justice Walter Croskey recited that a person who is not a party but who controls an action *in cooperation with others* is bound by the adjudications of litigated matters if that person had a proprietary or financial interest in the judgment. (*Id.* at p. 126.)

Kim fits this description. He had a financial interest in the lien question because he sought the lien to guarantee payment to him. And he controlled the litigation in cooperation with his client Central Korean: Kim wrote the complaint, and Kim presumably recommended a litigation strategy and gave advice on litigation tactics. Kim was Central Korean's attorney throughout. The Court of Appeal dismissed the 2018 appeal because the appeal was centrally about Kim's financial interests and not those of his clients.

Kim protests the trial court made no factual findings about the extent to which he controlled the litigation. Factual findings were unnecessary, however, because six appellate decisions sufficiently have charted the course of this litigation. They demonstrate the extent of Kim's involvement.

In reply, Kim adduces new arguments about section 1908 of the Code of Civil Procedure. Kim forfeited those arguments by failing to raise them in his opening brief. Raising new issues in reply unfairly deprives the other side of notice and an opportunity to be heard.

10

The trial court's analysis of issue preclusion was correct. New Life and Bank of Hope prevail on this issue.

### III

We turn to New Life's cross-complaint against Kim for slander of title and abuse of process. The basis for New Life's cross-claims was the lis pendens that Kim recorded on September 21, 2018.

The facts are undisputed. We independently review this question of law.

A lis pendens is a recorded document that constructively announces to the world a lawsuit may affect real property identified in the lis pendens. The purpose is to make any judgment in the specified lawsuit binding on those who might acquire an interest in that property. The lis pendens effectively republishes the pleadings in the lawsuit. Potential buyers or lenders can go to the courthouse and examine the pleadings. Any party in a lawsuit asserting a real property claim may file a lis pendens. (*Newell v. Superior Court* (2024) 107 Cal.App.5th 728, 734.)

The litigation privilege applies to any communications made in judicial or quasi-judicial proceedings by litigants or other participants to achieve the objects of the litigation that have some logical relation to the action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 211–212 (*Silberg*).)

The Supreme Court interprets the litigation privilege broadly to further its salutary purposes. The main purpose is to afford litigants and witnesses complete access to courts without fear of later harassment via derivative tort actions. If parties, lawyers, and witnesses worried their actions could be the subject of retaliatory attacks, their worry could inhibit open

11

communication in judicial proceedings.  (*Silberg*, *supra*, 50 Cal.3d at pp. 212–213.)

The litigation privilege protects the recording of a lis pendens so long as the lis pendens (1) identifies an action previously filed in a court of competent jurisdiction, and (2) the action affects title or right to possession of real property.  (*La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 473.)

Kim's lis pendens satisfied both conditions and thus gained the protection of the litigation privilege.

First, Kim's lis pendens identified a lawsuit previously filed in a court of competent jurisdiction.  No one claims otherwise.

Second, this lis pendens identified an action *affecting the title of real estate*.  Kim's suit sought to revive his expunged deed of trust, which had given Kim the power to order the sale of the property if his client did not pay his attorney fee.  Selling the property would affect the title to the property.  It would *dramatically* affect the title.  It would change the title completely.

Thus, the litigation privilege protected Kim's lis pendens.

New Life asserts the litigation privilege does not apply, citing *Campbell v. Superior Court* (2005) 132 Cal.App.4th 904 (*Campbell*).  *Campbell* is inapposite.  *Campbell* held a prayer for the imposition of an equitable lien in the underlying complaint is not a real property claim.  (*Id.* at pp. 910–922.)  *Campbell* did not involve a deed of trust with a power of sale.  Conversely, this appeal does not concern a prayer for the imposition of an equitable lien.

In passing, New Life cites *Park 100 Investment Group II, LLC v. Ryan* (2009) 180 Cal.App.4th 795 (*Park*).  *Park* helps Kim, not New Life.  *Park* held an easement dispute is a real property

12

claim.  The *Park* decision held this fact *defeated* a slander-of-title action.  (*Id.* at p. 809.)  This result aids Kim.

In sum, it was legal error for the trial court to make Kim liable for slander of title.  The litigation privilege barred this result.

The same holds for New Life's claim for abuse of process.  (*Woodcourt II, Ltd. v. McDonald Co.* (1981) 119 Cal.App.3d 245, 248–252.)  The litigation privilege defeated this claim because the privilege's broad purpose is to safeguard access to the judicial system by shielding litigants and lawyers from fear of later harassment via derivative tort actions.  (*Silberg, supra,* 50 Cal.3d at pp. 212–213.)  This broad purpose blocked the derivative tort action of abuse of process just as it blocked the slander-of-title claim.

## DISPOSITION

We remand for entry of judgment *against* Kim on his complaint and *for* Kim on the cross-complaint against him.  On this split decision, all sides are to bear their own costs incurred to date for this appeal under this case number.


WILEY, J.

We concur:


STRATTON, P. J.          VIRAMONTES, J.

13