[No. F061829. Fifth Dist. Nov. 28, 2012.]

LA JOLLA GROUP II et al., Plaintiffs and Appellants, v.
DANIEL A. BRUCE et al., Defendants and Respondents.

## COUNSEL

Wilkins, Drolshagen & Czeshinski, James H. Wilkins and Quentin Cedar for Plaintiffs and Appellants.

Betts, Rubin & McGuinness, James B. Betts and Joseph D. Rubin for Defendants and Respondents.

## OPINION

KANE, J.—When their family home in Fresno, California (the Property), was foreclosed on pursuant to a forged or fraudulent second deed of trust, Rebecca and Victorino Baquiran filed an action to quiet title to the Property and recorded a lis pendens. Thereafter, the party that had purchased the Property in good faith at the foreclosure sale, La Jolla Group II and its partners, Leroy Kleim and Alan Boyajian (collectively appellants), filed a complaint for slander of title against the Baquirans and the Baquirans' attorney, Daniel A. Bruce and the Law Offices of Zinkin & Bruce (collectively respondents), alleging that the recording of the lis pendens was unprivileged and wrongfully prevented appellants from being able to sell the Property. Respondents then filed a special motion to strike the slander of title complaint under Code of Civil Procedure section 425.16 (also known as an "anti-SLAPP" motion).[1] In ruling on the motion, the trial court concluded that (1) the recording of the lis pendens was a protected activity under section 425.16 and (2) appellants did not establish a probability of prevailing on their slander of title complaint. The trial court reached the latter conclusion because the evidence of forgery reflected the second deed of trust was void (not merely voidable) and because the absolute privilege of Civil Code section 47, subdivision (b) (hereafter Civil Code section 47(b)), applied to the

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure. The term "SLAPP" is "an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

recording of the lis pendens. Accordingly, respondents' special motion to strike was granted. Appellants appeal from that order. We will affirm.

## FACTS AND PROCEDURAL HISTORY

On or about June 28, 1989, Victorino Baquiran purchased the Property. At that time, Mr. Baquiran executed a first deed of trust to secure the loan used to purchase the Property. His wife, Rebecca Baquiran, was placed on title to the Property and the Baquirans made it their family home for more than 16 years, until they were evicted by appellants in June 2005.

*The Forged Second Deed of Trust and Resulting Foreclosure*

In July 2003, the Baquirans received notice that foreclosure proceedings were being commenced based on a second deed of trust on the Property securing a promissory note in favor of Steven and Carrie Mahlum. Prior to receiving that notice, the Baquirans had no knowledge that a deed of trust in favor of the Mahlums had been recorded on the Property. Indeed, the Baquirans had never borrowed money from, or even met, the Mahlums. The Mahlums likewise acknowledged that although they had received some payments from Zarrell Williams, which they thought related to the second deed of trust, they had never received any payments from the Baquirans.

It was later discovered that the second deed of trust was procured through the fraud or forgery of the Baquirans' former mortgage broker, Williams. Williams had brokered a refinance of the Baquirans' first deed of trust in April 1997, just prior to the date appearing on the second deed of trust naming the Mahlums as beneficiaries. Although the Baquirans admitted their signatures on the second deed of trust appeared to be authentic, they contended they were deceived because the document was materially altered and they never intended to sign a deed of trust in favor of the Mahlums. It was the Baquirans' theory that during the refinance transaction in 1997, Williams, by means of fraud and deceit, had them execute documents not related to or utilized in the refinance, which documents Williams later altered to fraudulently obtain a loan from the Mahlums in the Baquirans' name, and then Williams converted the proceeds of that loan for his own use. James A. Blanco, a handwriting and document expert retained by respondents, examined the second deed of trust and concluded that it had been materially altered. At various places, information had been covered over with masking fluid and replaced by other information. For example, under the beneficiary section of the document, two names were covered over using a masking fluid and replaced with the names of Steven and Carrie Mahlum.

On February 24, 2004, before the forgery by Williams had been brought to light, the Property was foreclosed upon and sold at a nonjudicial foreclosure sale to La Jolla Group II and David and Linda Hovannisian. On March 17, 2004, appellants initiated eviction proceedings against the Baquirans. The Baquirans initially hired Attorney Joseph C. Raineri, who was able to obtain a stay of eviction until January 2005. However, the Baquirans eventually concluded that Mr. Raineri had abandoned them and was not protecting their rights. Thereafter, in February 2005, the Baquirans retained Mr. Bruce to represent them in this matter.

*The Baquirans' Complaint to Quiet Title and Lis Pendens*

On May 25, 2005, the Baquirans, represented by Mr. Bruce, filed a complaint to quiet title against, among others, appellant La Jolla Group II. In that complaint, the Baquirans alleged the disputed second deed of trust was "a forgery and/or a fraudulently obtained document that was created by Williams," and they sought (1) to cancel the purported foreclosure sale based upon the forged deed of trust and (2) to restore possession and title of the Property to the Baquirans. On June 14, 2005, the Baquirans recorded a notice of pending action (the lis pendens) concerning the Property. The pending action specified in the lis pendens was the Baquirans' complaint to quiet title. The lis pendens was signed by Mr. Bruce.

On December 16, 2005, appellant La Jolla Group II filed a motion to expunge the lis pendens. On February 2, 2006, the motion proceeded to hearing. The Honorable Judge Alan M. Simpson considered the papers, evidence and arguments presented by the parties and declined to expunge the lis pendens. As part of his written order denying the motion, Judge Simpson found that the Baquirans "ha[d] shown the probable validity of their claim." The written order further explained: "The Rebecca Baquiran declaration, combined with the evidence of alteration of the deed of trust pursuant to which the property was sold, support [the Baquirans'] theory that the deed of trust was a forgery."

*Criminal Conviction of Zarrell Williams*

Meanwhile, criminal charges were filed by the Fresno County District Attorney against Williams for multiple acts of theft, forgery and similar crimes against several victims. As to Williams's conduct perpetrated against the Baquirans, the consolidated information specifically charged Williams with four distinct crimes: grand theft of money, forgery of a deed of trust, knowingly performing a notarial act on a false or forged trust deed, and procuring or offering a false or forged instrument (deed of trust) for filing or recording. The consolidated information set forth the following facts in

support of these particular counts:[2] (1) Williams was a loan broker who first worked with Rebecca Baquiran in the early 1990's when she obtained a personal loan, and again in 1997 when he arranged a consolidation loan for the Baquirans through EquiCredit. In the same time period, Williams made a number of hard money property loans on behalf of the Mahlums. (2) When the Mahlums failed to receive certain payments on those property loans, Williams advised them that he had a loan, including a note and deed of trust, on the Property. (3) Williams produced for the Mahlums a deed of trust and assignment of rents purportedly signed by the Baquirans that had been filed with the Fresno County Recorder's office on June 4, 1998. That deed of trust was subsequently found to have been altered by Williams. (4) The deed of trust and assignment of rents was forged by Williams with intent to defraud. (5) The forged deed of trust was notarized by Williams with knowledge that it contained a false statement or was forged.

On September 13, 2006, the jury found Williams guilty as charged on each of the counts relating to the Property, including forgery of the deed of trust, knowingly performing a notarial act on a false or forged trust deed, and procuring or offering a false or forged deed of trust for filing or recording. Williams was also convicted on all but one of the other crimes charged against him that involved other defrauded victims. He was sentenced to serve three years four months in prison.

*Withdrawal of the Lis Pendens*

On July 6, 2009, the Baquirans recorded a notice of withdrawal of lis pendens. According to Mr. Bruce, the lis pendens was withdrawn as part of a negotiated settlement reached between the Baquirans, the Mahlums and All-Cal Foreclosure Services, Inc. The Mahlums and All-Cal Foreclosure Services, Inc., were additional defendants in the quiet title action.

*Appellants' Complaint for Slander of Title*

On June 29, 2010, appellants filed their complaint for slander of title against respondents. The complaint for slander of title alleged that the recording of the lis pendens was not privileged and wrongfully prevented appellants from being able to sell the Property from June 2005 to July 2009, resulting in damages to appellants. Allegedly, the Baquirans' admission that their signatures on the second deed of trust were authentic established that there was no justifiable basis for alleging the second deed of trust was a forgery or for seeking to invalidate the foreclosure sale. Thus, according to

---

[2] The counts are numbered here for convenience; such enumeration did not appear in the original.

the complaint for slander of title, the recording of the lis pendens was false, wrongful and unprivileged since it purportedly had no evidentiary basis.

*Respondents' Special Motion to Strike*

On August 6, 2010, respondents moved to strike appellants' slander of title complaint pursuant to section 425.16 (the "anti-SLAPP" statute) on the grounds that (1) recording the lis pendens was a protected activity under the statute (see § 425.16, subd. (e)) and (2) appellants could not establish a probability of prevailing on the slander of title claim (§ 425.16, subd. (b)(1)). In their opposition, appellants conceded that the filing of the lis pendens was a protected activity under the statute. Therefore, the focus of the motion was on the second step or prong of the analysis under section 425.16—that is, whether appellants could show a probability of prevailing on the merits of their complaint for slander of title.

After considering the evidence and arguments presented by the parties, the trial court found that the disputed deed of trust was a forgery since it had been materially altered by Williams. Therefore, it was void and not merely voidable; and, as a consequence, it could not convey title—not even to a good faith purchaser at a foreclosure sale. The trial court further held that under the circumstances, the litigation privilege of Civil Code section 47(b) was applicable to the recording of the lis pendens. For these reasons, the trial court concluded appellants did not have a probability of prevailing and, therefore, the special motion to strike was granted.

Appellants' notice of appeal followed.

## DISCUSSION

### I. *Standard of Review*

We review de novo the trial court's ruling on an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2].) "Resolving the merits of a section 425.16 motion involves a two-part analysis, concentrating initially on whether the challenged cause of action arises from protected activity within the meaning of the statute and, if it does, proceeding secondly to whether the plaintiff can establish a probability of prevailing on the merits. [Citation.]" (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699 [61 Cal.Rptr.3d 29] (*Overstock.com*).) In our de novo review, " '[w]e consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence

favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley v. Mauro, supra*, at p. 326.)

## II. *Overview of the Anti-SLAPP Statute*

■ "[T]he Legislature enacted section 425.16, the anti-SLAPP statute, to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. [Citation.]" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315 [86 Cal.Rptr.3d 288, 196 P.3d 1094].) "The Legislature authorized the filing of a special motion to strike such claims (§ 425.16, subds. (b)(1), (f)), and expressly provided that section 425.16 should 'be construed broadly.' [Citations.]" (*Ibid.*) The resolution of an anti-SLAPP motion "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon Enterprises*).)

■ The present appeal concerns, in particular, the second step under the statutory analysis—namely, whether appellants have demonstrated a probability of prevailing on their claim for slander of title. (§ 425.16, subd. (b)(1).) In order to establish a probability of prevailing on a cause of action in the context of an anti-SLAPP motion, a plaintiff must state and substantiate a legally sufficient claim. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].) " 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' " (*Ibid.*) That is, the plaintiff must " ' " 'make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor.' " ' [Citation.]" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010 [113 Cal.Rptr.2d 625].) "In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) Accordingly, "the motion to strike should be granted if the defendant 'defeats the plaintiff's showing as a matter of law,

such as by establishing a defense or the absence of a necessary element.' [Citation.]" (*Carver v. Bonds* (2005) 135 Cal.App.4th 328, 344 [37 Cal.Rptr.3d 480].)

III. *Motion to Strike Under Section 425.16 Was Properly Granted*

Under the first step of the analysis under section 425.16, respondents must make a threshold showing that the challenged cause of action arose from protected activity within the meaning of the statute. (§ 425.16, subd. (b)(1); *Equilon Enterprises, supra,* 29 Cal.4th at p. 67; *Overstock.com, supra,* 151 Cal.App.4th at p. 699.) Here, the complaint for slander of title was premised on a single activity: the recording of the lis pendens. Unquestionably, the recording of the lis pendens constituted a written statement made in connection with issues under consideration in a judicial proceeding—that is, the underlying quiet title action. (§ 425.16, subd. (e).)[3] Therefore, as conceded by appellants in their opening brief, the challenged complaint for slander of title arose out of protected activity under section 425.16, and respondents satisfied their burden under the first step of the analysis.

We now turn to the heart of this appeal, which is the *second step* of the statutory analysis. In response to the anti-SLAPP motion, once respondents made their initial threshold showing, the burden shifted to appellants to demonstrate a probability of prevailing on their claim. (§ 425.16, subd. (b)(1); *Park 100 Investment Group II, LLC v. Ryan* (2009) 180 Cal.App.4th 795, 805 [103 Cal.Rptr.3d 218].) That meant appellants had to state and substantiate a legally sufficient cause of action for slander of title. (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1056.) As noted above, we consider (but we do not weigh) the evidence presented by both sides, and we may decide that respondents' evidence defeats appellants' showing as a matter of law, " 'such as by establishing a defense or the absence of a necessary element.' [Citation.]" (*Carver v. Bonds, supra,* 135 Cal.App.4th at p. 344.)

As explained below, we conclude that appellants have not established a tenable claim for slander of title. We reach this conclusion on two separate grounds: *First,* the absolute privilege under Civil Code section 47(b) was applicable to the recording of the lis pendens in this case. *Second,* the evidence of forgery established as a matter of law that the second deed of trust was void and, therefore, appellants never acquired title to the Property.

---

[3] Section 760.010 et seq., which governs quiet title actions, provides that immediately upon commencement of such an action, the plaintiff *shall* file a lis pendens in the office of the county recorder. (§ 761.010.)

Each of these grounds would be a sufficient basis to conclude that appellants have no probability of prevailing on their claim. We shall discuss them separately, beginning with the issue of privilege.

A. *Privilege of Civil Code Section 47(b)*

■ Appellants' sole cause of action was for slander of title. The elements of a cause of action for slander of title are (1) a publication, which is (2) *without privilege* or justification, (3) false, and (4) causes pecuniary loss. (*Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040, 1051 [93 Cal.Rptr.3d 457].) The critical question here is whether the publication in the present case—the lis pendens recorded by the Baquirans—was privileged under Civil Code section 47(b).

■ Civil Code section 47(b) provides that, with certain exceptions, a publication made in any judicial proceeding is privileged.[4] Because of the vital purposes served by this privilege, it is " 'absolute' " in nature and applies to all causes of action except malicious prosecution. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 [7 Cal.Rptr.3d 803, 81 P.3d 244]; see *Silberg v. Anderson* (1990) 50 Cal.3d 205, 215 [266 Cal.Rptr. 638, 786 P.2d 365].) The purposes of Civil Code section 47(b) are " 'to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation.' [Citation.]" (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955 [56 Cal.Rptr.3d 477, 154 P.3d 1003].) To further these important goals, the privilege is applied broadly. (*Ibid.*)

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson, supra*, 50 Cal.3d at p. 212.) "It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. [Citation.]" (*Rusheen v. Cohen, supra*, 37 Cal.4th at p. 1057.) It applies to "any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Silberg v. Anderson, supra*, at p. 212.)

---

[4] Civil Code section 47(b) is often referred to as the litigation privilege. (*Rusheen v. Cohen, supra*, 37 Cal.4th at p. 1057.)

■   The publication at issue here was the lis pendens recorded in connection with the Baquirans' complaint to quiet title to the Property. " 'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice.' [Citation.] A lis pendens may be filed by any party in an action who asserts a 'real property claim.' (Code Civ. Proc., § 405.20.) Section 405.4 defines a ' "Real property claim" ' as 'the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property . . . .' " (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647 [15 Cal.Rptr.3d 805, 93 P.3d 395], fn. omitted.)

Previously, the absolute privilege of Civil Code section 47(b) has been broadly applied to the recording of a lis pendens. (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405] (*Albertson*).) "If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches. [Citations.] It therefore attaches to the recordation of a notice of *lis pendens*, for such a publication is permitted by law, and like other documents that may be filed in an action, it has a reasonable relation thereto and it is immaterial that it is recorded with the county recorder instead of being filed with the county clerk." (*Id.* at p. 381.)

■   *Albertson*'s holding, however, has been somewhat limited or "partially abrogated" by a 1992 amendment to Civil Code section 47. (*Park 100 Investment Group II, LLC v. Ryan, supra,* 180 Cal.App.4th at p. 813, fn. 5; see *Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1378–1379 [1 Cal.Rptr.3d 116] (*Palmer*).) That amendment added the provision that is currently set forth at Civil Code section 47, subdivision (b)(4) (hereafter Civil Code section 47(b)(4)), which states: "A recorded lis pendens is not a privileged publication *unless* it identifies an action previously filed with a court of competent jurisdiction which affects the title or right of possession of real property, as authorized or required by law." (Italics added.) As a result of this provision, "the litigation privilege . . . applies *if* the lis pendens (1) identifies an action 'previously filed' in a court of competent jurisdiction that (2) affects title or right to possession of real property." (*Alpha & Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 665 [132 Cal.Rptr.3d 781] (*Alpha & Omega*), italics added.)

Here, the subject lis pendens expressly identified the Baquirans' previously filed action—namely, the Baquirans' complaint to quiet title. In addition, that action was clearly one that affected title or right to possession of the Property, since it sought to quiet title to the Property through cancellation of the

foreclosure sale and restoration of title and possession to the Baquirans, all on the ground that the second deed of trust was a forgery. Thus, the statutory conditions for application of the privilege to a recorded lis pendens, as set forth in Civil Code section 47(b)(4), have plainly been satisfied in this case. It follows that the privilege of Civil Code section 47(b) applies to the subject lis pendens, thereby precluding liability for slander of title.

Appellants nevertheless contend the privilege of Civil Code section 47(b) does not apply to the lis pendens in this case. They argue that because the Baquirans' complaint to quiet title lacked *evidentiary merit* to the extent the facts showed the second deed of trust was merely "voidable" rather than void, the privilege did not attach. In so arguing, appellants take the position that the privilege only applies to a recorded lis pendens if it is shown that the underlying action has evidentiary merit. In support of that proposition, appellants rely on language from *Palmer, supra*, 109 Cal.App.4th 1367, a prior decision of this court. We now consider that decision at length.

In *Palmer*, the plaintiffs acquired ownership of a house in Bakersfield by purchasing it at a sheriff's sale that took place to satisfy a judgment lien in a creditor's collection action. Later, the former owners filed a bankruptcy action and also filed an appeal in the collection action. In connection with these court filings, the former owners recorded a lis pendens that effectively prevented the plaintiffs from being able to sell or refinance the property. (*Palmer, supra*, 109 Cal.App.4th at pp. 1370–1374.) The plaintiffs then sued the former owners for slander of title, asserting that the actions brought by the former owners were not the type of proceedings for which it was appropriate to file a lis pendens. (*Id.* at p. 1381.) *Palmer* agreed with the plaintiffs' theory, holding that the privilege of Civil Code section 47(b) did not apply to the lis pendens in question, since the underlying collection and bankruptcy actions filed by the former owners did not allege a real property claim. (*Palmer, supra*, at p. 1381.) On that record, the holding in *Palmer* was correct.

The language relied on herein by appellants came at the end of *Palmer*'s discussion of developments in the law. *Palmer* summarized the revisions enacted in 1992 to the lis pendens statutes, in which former sections 409 to 409.9 were repealed and replaced by sections 405 to 405.61. (*Palmer, supra*, 109 Cal.App.4th at pp. 1377–1378.) *Palmer* noted that under the new statutory scheme, a motion to expunge a lis pendens could be based not only on a failure to plead a real property claim (§ 405.31), but also on a failure of the claimant to establish by a preponderance of the evidence the probable

validity of the real property claim (§ 405.32).[5] (*Palmer, supra,* at pp. 1377–1378.) Thus, the revised lis pendens statutes provided that a lack of evidentiary merit would be a ground for expungement: " 'If the claimant *does* plead a real property claim, but the claim pleaded has no evidentiary merit, the lis pendens must be expunged upon motion under [section] 405.32.' " (*Palmer, supra,* at pp. 1377–1378.)

*Palmer* observed that in the same year that these revisions to the lis pendens statutes took place (1992), the Legislature *also* amended section 47 of the Civil Code to add former subdivision (b)(3), now subdivision (b)(4), which " 'partially abrogated' " the holding of *Albertson* that recording a notice of lis pendens is absolutely privileged. (*Palmer, supra,* 109 Cal.App.4th at pp. 1378–1379.) After quoting the language of Civil Code section 47(b)(4), *Palmer* concluded its summary of the lis pendens statutes and Civil Code section 47(b)(4) with the following statement: "Therefore, if the pleading filed by the claimant in the underlying action does not allege a real property claim, *or the alleged claim lacks evidentiary merit, the lis pendens, in addition to being subject to expungement, is not privileged.* It follows the lis pendens in that situation may be the basis for an action for slander of title." (*Palmer, supra,* at p. 1380, italics added.)

Appellants rely on the above quoted language in *Palmer, supra,* 109 Cal.App.4th 1367 to support their position that the litigation privilege does not apply to a lis pendens if the underlying action is lacking in evidentiary merit. Respondents counter that Civil Code section 47(b)(4) contains no evidentiary merit exception and they argue it would be improper to insert such an exception into the statute. In this regard, respondents argue that the subject language in *Palmer,* to the extent it added an evidentiary test to the privilege statute, is not a correct statement of the law. We agree with respondents.

In *Alpha & Omega, supra,* 200 Cal.App.4th 656, the Fourth District Court of Appeal recently examined Civil Code section 47(b)(4) and concluded there is no " 'lack of evidentiary merit exception' " under the statute. (*Alpha & Omega, supra,* at p. 667.) There, as in our case, a party suing for slander of title had argued—based on the language in *Palmer, supra,* 109 Cal.App.4th 1367—that the privilege did not attach if the underlying real property claim lacked evidentiary merit. (*Alpha & Omega, supra,* at p. 666.) The Court of Appeal explained its rejection of that interpretation of the statutory privilege: "We reject Alpha's interpretation of subdivision (b)(4) of Civil Code section 47. In discerning the Legislature's intent, we look to the words of the statute,

---

[5] Section 405.3 states that " '[p]robable validity' " means "with respect to a real property claim," it is "more likely than not that the claimant will obtain a judgment against the defendant on the claim."

'assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.' [Citations.] [¶] The language of subdivision (b)(4) of Civil Code section 47 is not ambiguous and in any event is not reasonably susceptible to a construction that would create an *additional* exception to the absolute litigation privilege based on the lack of 'evidentiary merit' of a claimaint's real property claim in connection with a recorded lis pendens." (*Alpha & Omega, supra*, 200 Cal.App.4th at pp. 666–667.)

██ We believe this analysis of the privilege statute is correct. Civil Code section 47(b)(4) does not contain a lack of " 'evidentiary merit' " exception to the litigation privilege, and it would be improper for us to insert what the Legislature has plainly omitted. (*Alpha & Omega, supra*, 200 Cal.App.4th at pp. 666–667; see § 1858 [court's role is to declare terms of a statute, not to "insert what has been omitted"].) ██ " 'It is a prime rule of construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning. [Citations.] "An intent that finds no expression in the words of the statute cannot be found to exist. The courts may not speculate that the legislature meant something other than what it said. Nor may they rewrite a statute to make it express an intention not expressed therein." ' [Citation.]" (*Mutual Life Ins. Co v. City of Los Angeles* (1990) 50 Cal.3d 402, 412 [267 Cal.Rptr. 589, 787 P.2d 996].)

Civil Code section 47(b)(4) clearly describes the conditions for application of the privilege to a recorded lis pendens as follows: "A recorded lis pendens is not a privileged publication unless it identifies an action previously filed with a court of competent jurisdiction which affects the title or right of possession of real property, as authorized or required by law." (Civ. Code, § 47(b)(4).) Those conditions are (1) the lis pendens must identify a previously filed action and (2) the previously filed action must be one that affects title or right of possession of real property. We decline to add a third requirement that there must also be evidentiary merit.[6]

██ We also agree with the analysis in *Alpha & Omega* that this construction of the statute is further supported by the statutory definition of what constitutes a real property claim. (See *Alpha & Omega, supra*, 200 Cal.App.4th at p. 667.) A party who "asserts a real property claim" may record a lis pendens. (§ 405.20.) Section 405.4 defines a " '[r]eal property claim' " as "the cause or causes of action in a pleading which would, if

---

[6] It is apparent that *Palmer, supra*, 109 Cal.App.4th 1367, in adding an evidentiary requirement, erroneously merged the evidentiary standard for a motion to expunge into the distinct question of whether the privilege applies.

meritorious, affect (a) title to, or the right to possession of, specific real property . . . ." Thus, "[s]ection 405.4 does not define [a] 'real property claim,' or lack thereof, on the basis of the strength or weakness of the *evidence* to support that claim. Instead, it is clear from the plain language of section 405.4 that a 'real property claim' is determined from the cause or causes of action set forth in the pleading(s)." (*Alpha & Omega, supra,* 200 Cal.App.4th at p. 667.) Consistent with this definition, Civil Code section 47(b)(4) states in like terms that, for the privilege to apply, a recorded lis pendens must identify "an action . . . which affects" title or possession of real property. In other words, the action must assert a real property claim, which respondents clearly did here.

Moreover, we believe that if the Legislature had intended to erect an evidentiary hurdle or create an exception to the privilege based on lack of evidentiary merit, it would have said so. Since the Legislature did not do so, we are not at liberty to insert what has been omitted. For these reasons, we reject appellants' proposition that the availability of the litigation privilege to a recorded lis pendens depends upon whether the claimant is able to make a certain evidentiary showing of merit to support the real property claim. On this issue, the dicta in *Palmer* that is relied upon by appellants was in error and we decline to follow it.

We hold that the absolute privilege of Civil Code section 47(b) applied to the recorded lis pendens in this case and, therefore, appellants cannot prevail on their complaint for slander of title as a matter of law. Accordingly, the trial court correctly granted respondents' special motion to strike.

## B. *The Forged Deed Was Void*

The second reason the trial court's anti-SLAPP ruling was correct is based on the evidence of forgery. Appellants argue that since the Baquirans admitted they may have signed the second deed of trust, it was merely voidable, not void. Respondents contend that since the second deed of trust was materially altered, it was a forgery and therefore void. As we briefly explain, respondents are correct.

"A deed is void if the grantor's signature is forged or if the grantor is unaware of the nature of what he or she is signing. [Citation.] A voidable deed, on the other hand, is one where the grantor is aware of what he or she is executing, but has been induced to do so through fraudulent misrepresenta-,tions. [Citation.]" (*Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, 378 [100 Cal.Rptr.2d 801].) "Although the law protects innocent purchasers and encumbrancers, 'that protection extends only to those who obtained good

legal title. [Citations.] . . . [A] forged document is void *ab initio* and constitutes a nullity; as such it cannot provide the basis for a superior title as against the original grantor.' [Citations.]" (*Id.* at pp. 379–380.) A forgery includes a " 'false making of a writing' " that " 'falsely purports to be the writing of another.' " (*Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 41–42 [198 Cal.Rptr. 418], italics omitted.) A deed that has been materially altered after it was signed is a forgery. (*Montgomery v. Bank of America* (1948) 85 Cal.App.2d 559, 563 [193 P.2d 475] ["Since the deed was altered without the knowledge, consent or approval of plaintiffs, after it had been signed by them and transmitted to the escrow holder, it was void."]; *Wutzke v. Bill Reid Painting Service, Inc., supra,* at pp. 43–44 [a forged deed is void].)

Here, respondents have produced uncontradicted evidence to establish that the second deed of trust was materially altered after it was signed. The Baquirans were apparently induced to sign a deed of trust in favor of Allstar Financial Services and Ronna L. Williams, which deed of trust was later altered by Zarrell Williams to create something materially different—a deed of trust in favor of the Mahlums. Existing names and other information were covered over by Williams with masking fluid and the Mahlums' names as beneficiaries were fraudulently inserted to replace what was there before. The second deed of trust was altered by Williams in an attempt to fraudulently support an unrelated loan or debt he had with the Mahlums. The Baquirans never met the Mahlums, never sought a loan from the Mahlums and never borrowed any money from them. In short, the Baquirans never contemplated, never authorized and never signed a deed of trust in favor of the Mahlums. Respondents contend that this evidence conclusively shows that the second deed of trust in favor of the Mahlums was a forgery. We agree. Since the second deed of trust was materially altered after it was signed, it was a forgery and was therefore void. (*Montgomery v. Bank of America, supra,* 85 Cal.App.2d at p. 563 [materially altered deed was void].)

Since the second deed of trust was a forgery and was void, appellants received no title by it.[7] (*Schiavon v. Arnaudo Brothers, supra,* 84 Cal.App.4th at pp. 379–380.) Accordingly, for this additional reason, appellants failed to establish a probability of prevailing on their claim for slander of title and the special motion to strike was properly granted.

---

[7] Appellants suggest the deed of trust may have been "blank" when signed. The purported evidence on this point was vague, equivocal (as to particular transaction) and hearsay, and for these reasons could not support a judgment in appellants' favor. And even if the evidence on this point were admissible, it would not change the outcome because it does not dispute or contradict the critical fact that the deed was materially altered after it was signed and hence a forgery. Finally, we fail to see how the "blank" deed theory could conceivably support appellants' position, since a blank deed is also void. (See *Trout v. Taylor* (1934) 220 Cal. 652, 656 [32 P.2d 968]; *Green v. MacAdam* (1959) 175 Cal.App.2d 481, 486 [346 P.2d 474].)

## DISPOSITION

The order granting respondents' special motion to strike is affirmed. Costs on appeal are awarded to respondents.

Wiseman, Acting P. J., and Cornell, J., concurred.