Filed 5/26/26  Boren v. Jordan CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| IRA BOREN, as Trustee, etc., et al., | B334970 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 20STCV00514) |
| v. | |
| CHRISTOPHER JORDAN, Individually and as Trustee, etc., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Lia Martin, Judge.  Reversed and remanded with directions.

Beach Cities Law Group, Frank Sandelmann and Brennan Mitch for Defendant and Appellant.

Early Sullivan Wright Gizer & McRae, Scott E. Gizer and Lisa M. Zepeda for Plaintiffs and Respondents.

\* \* \* \* \* \* \* \* \* \*

This action arises from a dispute over title to residential real property held in a revocable living trust.  The resolution of that dispute turns on whether Angela Fawn Wallace, who is not a party to this appeal, was the lawful successor trustee.  Ira Boren as trustee of the Morris Boren Living Trust (Boren) and Creative Investment Group, Inc. (CIG) each loaned money to Wallace with this property as security.  After a bench trial, the trial court ruled in favor of Boren and CIG, finding Wallace was the successor trustee and that Boren's and CIG's deeds of trust were valid encumbrances on the property.

Christopher Jordan, the grandson of the original grantor and trustee, appeals from the judgment.  He contends the trial court made numerous errors, including finding Wallace to be the authorized successor trustee, failing to give collateral estoppel effect to a prior order from the probate court, and excluding evidence of pending criminal proceedings against Wallace. He also contends the trial court's findings are not supported by substantial evidence.

We conclude the judgment is not supported by substantial evidence, and therefore reverse the judgment entered in favor of Boren and CIG, and remand with directions to enter judgment in favor of Christopher Jordan on the complaint and cross-complaint.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.    The Chanie D. Jordan trust**

In March 1997, Chanie D. Jordan executed a declaration of revocable living trust creating the Chanie D. Jordan Separate Property Trust (Trust).  Because of the common surname, we will refer to Ms. Jordan and the other members of the Jordan family by their first names for clarity.

2

One of the listed assets of the Trust is the residential real property that is at the center of this dispute:  a triplex located on Orange Drive in Los Angeles (Assessor's Parcel No. 5070-017-029) (Property).  The Trust identifies Chanie as the original grantor and trustee with the right to all income of the Trust during her lifetime, and the right to use and possess the residential properties to which the Trust held title.

Paragraph 3.011 of the Trust provides that "[u]pon the death, resignation or inability" of Chanie to serve as trustee, Chanie's son, Otris Jordan, would be the successor trustee.  Further, if the successor trustee "will not or cannot serve," then a successor trustee "may be chosen by the beneficiaries of this Trust.  If the beneficiaries cannot unanimously agree on a Successor Trustee the court shall appoint one."  Paragraph 3.013 allows Chanie, "[d]uring [her] lifetime," to appoint any individual or institution as successor trustee.

In addition, the Trust provides that upon Chanie's death, all trust assets would pass to Otris.  Paragraph 1.022 states that Chanie retains the right to dispose of certain items of personal property by way of a "Letter of Direction," but otherwise all assets were devised to her son Otris.  In the event Otris predeceased Chanie, paragraph 1.024 states the assets were to be distributed to her heirs under the laws of intestacy.

Otris died in March 2010, predeceasing Chanie.  Chanie died over four years later in December 2014 at the age of 96.  Christopher is Otris's only child.  The record does not reflect the existence of any other heirs.  At the time of Chanie's death in 2014, Christopher was not aware of the terms of his grandmother's Trust.  He never spoke with Wallace, before or after Chanie's death.

3

## 2. Angela Fawn Wallace

The parties both assert that Wallace was the lawyer who drafted the Trust for Chanie in 1997.

In early 2015, shortly after Chanie's death, Wallace executed a form titled "Affidavit—Death of Trustee" which stated: "At the time of the demise of the Decedent [Chanie], the Decedent was the record owner, as Trustee, of real property commonly known as [the Property]." Wallace, identifying herself as the successor trustee, recorded the affidavit in the chain of title for the Property on February 20, 2015 (Instrument No. 20150190447).

In September 2015, Wallace recorded a second affidavit regarding Chanie's death titled "Death of Trustee—Succession of Successor Trustee" (Instrument No. 20151140310). This second affidavit attested again to Chanie's death in 2014. Wallace represented that she was named in the Trust as the successor trustee, and that she consented to assume the powers and duties of successor trustee.

Wallace also created a new trust titled the Chanie B. Jordan Family Trust dated August 24, 2015. The reason for the incorrect middle initial in the title of this second trust is not explained in the record. Wallace identified herself as the trustee of this new trust and transferred title to the Property into the new trust. The grant deed executed by Wallace was recorded in September 2015 (Instrument No. 20151140311).

Wallace procured loans using the Property as security. The first loan was obtained from Boren for $350,000. The Boren deed of trust was recorded on February 20, 2015 (Instrument No. 20150190448). Wallace also borrowed $150,000 from plaintiff

4

CIG. The CIG deed of trust was recorded on June 30, 2015 (Instrument No. 20150784841).

### 3. Pleadings, bench trial and judgment

In January 2020, plaintiffs Boren and CIG filed this action for quiet title and declaratory relief against Christopher, Wallace, Chanie's estate, and Otris's estate. Where appropriate, we use the term plaintiffs to refer collectively to Boren and CIG.

Plaintiffs alleged that Wallace was Chanie's attorney, that she drafted the Trust, that the Property was lawfully "distributed" to Wallace upon Chanie's death, and that they loaned money to Wallace in good faith. Plaintiffs alleged that a declaration quieting title with respect to their beneficial interests in the Property was necessary in light of the then-pending criminal proceedings against Wallace. Plaintiffs requested an order quieting title to their respective deeds of trust, with the Boren deed given first priority and the CIG deed granted second priority.

Plaintiffs attached to their complaint a copy of the Notice of Pendency of Action recorded by the district attorney's office on August 3, 2018 (Instrument No. 20180784277). In that document, the district attorney's office gave notice of pending criminal proceedings against Wallace under Penal Code section 115 (offering false or forged instruments). The notice asserted that various instruments recorded against the Property were fraudulent and therefore null and void from the outset, including the Boren deed of trust, the CIG deed of trust, Wallace's affidavit of death of trustee, and the grant deed transferring title of the Property to Wallace's new trust.

Christopher answered the complaint and filed a cross-complaint seeking to quiet title to the Property and to cancel

5

various instruments recorded by Wallace, including the Boren and CIG deeds of trust, on the grounds they were null and void from the inception. Christopher alleged he was the grandson of Chanie and the successor trustee of the Trust, and that Wallace was never lawfully designated the successor trustee, nor was she a beneficiary under the Trust.

Wallace did not appear and her default was taken on both the complaint and cross-complaint.

In addition to filing the cross-complaint in this action, Christopher filed a petition in the probate court requesting an order confirming his status as the sole successor trustee under the terms of the Trust. In March 2021, after a hearing at which counsel for plaintiffs was present, the probate court granted Christopher's petition in the case titled *In the Matter of the Chanie D. Jordan Separate Property Trust, dated March 17, 1997* (case No. 20STPB04632). In granting Christopher's petition, the probate court confirmed Christopher to be the sole successor trustee and sole beneficiary of the Trust; invalidated paragraph 3.02 of the Trust; and made no finding concerning transfers from the Trust to the second trust created by Wallace in August 2015.

On December 7 and 8, 2022, the trial court conducted a bench trial. Christopher asked the court for an order giving collateral estoppel effect to the probate court's order. The trial court denied the request, finding the probate court only determined that Christopher was the current successor trustee of the Trust, but did not address who was rightfully the successor trustee in 2015 when the Boren and CIG deeds of trust were created and recorded against the Property. The court agreed to take judicial notice of the probate court's order for the limited

purpose of Christopher's standing to prosecute the cross-complaint as the current trustee.

In addition, the trial court denied Christopher's request to introduce evidence of Wallace's 2002 felony convictions for forgery (Pen. Code, § 470, subds. (a) & (d)), grand theft (*id.*, § 487, subd. (a)), and perjury (*id.*, § 118), finding the convictions too remote to be probative. The court also excluded the district attorney's 2018 notice of pendency of action, and the then-pending felony complaint against Wallace because the criminal case had not yet proceeded to a disposition.

Several witnesses provided testimony. Phil Winlock testified he was not sure exactly when he was first contacted by Wallace, but he believed it was sometime in 2013. She asked about making general repairs to the Property, such as fixing the heating system and painting. He referred to the work performed as "[n]othing major." Winlock said Wallace was the person who paid him, and she eventually hired him to be the property manager. When asked if he knew Wallace to have authority to act on behalf of the Property, Winlock said "[n]othing official," just that she was the one who paid him. Winlock said he did not know who Christopher was and had never spoken with him.

Brian Boren testified to the circumstances surrounding the creation of the Boren deed of trust. Boren said that after review of an investment synopsis and supporting documentation, the Boren trust agreed to loan $350,000 to Wallace with the Property as security. Boren said Wallace made payments on the loan for about three years before defaulting. Boren confirmed that a criminal background check was not performed on Wallace before the Boren trust agreed to loan her the money.

7

Karl Van Denberg testified to the circumstances surrounding the creation of the CIG deed of trust. Van Denberg explained that he reviewed the documentation presented to CIG, including the title company report and the existing first deed of trust held by the Boren trust, and that CIG eventually funded a $150,000 loan to Wallace secured by the Property. Wallace made payments on the loan for over two years before defaulting. Van Denberg did not perform a criminal background check of Wallace as part of his review.

Jay Hibert, a real estate finance consultant, testified as an expert on the standard of care in "private or hard money lending." After explaining the general process of presenting a loan package to a private lender, Hibert stated his opinion that plaintiffs Boren and CIG met the industry standard in reviewing the necessary documentation and in funding the loans to Wallace. Hibert said there was nothing in the documentation for either loan that raised any red flags. Hibert stated his opinion that a criminal background check of a loan applicant was not considered part of the normal due diligence required of a lender in the hard money and private lender context.

Christopher testified that Chanie was his grandmother, Otris was his father, and he was Otris's only child. He confirmed he obtained an order from the probate court regarding his status as trustee. Christopher said he visited with his grandmother and father only on an occasional basis, but he knew the Property was his grandmother's "pride and joy." Christopher testified he never discussed the Trust with his grandmother or his father, and was not aware of it until after he was served with the complaint in this action. It was Christopher's understanding that Wallace was the attorney who drafted his grandmother's trust documents.

He said Wallace never contacted him, and he had never spoken to her.

Counsel for plaintiffs advised the court that Wallace was not being called as a witness because of the then-pending criminal charges against her, and the expectation she would assert her constitutional rights not to testify.

After lengthy briefing and argument, the matter was taken under submission in April 2023. In July 2023, the trial court issued separate written rulings on the complaint and the cross-complaint. Both written orders summarized the pleadings, and the evidence received at the bench trial.

On the complaint, the court found in favor of plaintiffs Boren and CIG, citing the following evidence: After her son Otris passed, Chanie failed to make Christopher aware of the Trust and its provisions. According to Winlock's testimony, Wallace contacted him in 2013 about making repairs to the Property, and also eventually retained him to be the manager of the Property. Wallace rented out the Property and made payments on both loans for over two years. The court therefore "infer[red] that, during her lifetime, Chanie named [Wallace]" the successor trustee under paragraph 3.013 of the Trust. "Whether the decision by Chanie was wise or not, the weight of the evidence supports the finding that [Wallace] was the Successor Trustee." The court also found that Christopher had not met his burden of demonstrating fraud by Wallace.

On Christopher's cross-complaint, the court found in favor of Boren and CIG, concluding they had demonstrated they were bona fide encumbrancers who were transacting business in good faith with Wallace as the trustee. The court cited Probate Code sections 18100 and 18100.5.

9

The court ordered plaintiffs to file a proposed judgment. The record does not include a request for a statement of decision by any party.

On November 1, 2023, judgment was entered on the complaint quieting title in favor of plaintiffs Boren and CIG, specifying the Boren deed of trust and the CIG deed of trust were valid encumbrances on the Property as of their respective recording dates.

This appeal followed.

In December 2024, while this appeal was pending, Wallace pled no contest to multiple felonies, including two counts related to the Property, and was sentenced to nine years in prison. The district attorney's office obtained an order from the criminal court that various instruments, including the Boren deed of trust and the CIG deed of trust were void *ab initio*. The order was recorded in the chain of title for the Property on December 16, 2024 (Instrument No. 20240892691). Christopher requested we take judicial notice of the criminal court judgment against Wallace, and the order voiding the instruments. Plaintiffs also filed a request for judicial notice, asking that we take judicial notice of their motion in the criminal court seeking to vacate the order voiding their deeds which apparently remained pending as of the time plaintiffs filed their request.

## DISCUSSION

Before we turn to the merits, we address two procedural issues. The first concerns the parties' requests for judicial notice of postjudgment documents and orders from the criminal action against Wallace. " '[I]t has long been the general rule and understanding that "an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters

10

which were before the trial court for its consideration.” ’ ” (*California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 442.) Thus, absent exceptional circumstances, “we generally do not consider documents that were not before the trial court or matters that occurred after the appealed judgment or order was issued.” (*OneTaste Inc. v. Netflix, Inc.* (2025) 116 Cal.App.5th 174, 194; see also *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.)

Christopher argues that exceptional circumstances exist here. He says if we decline to notice the criminal judgment and voidance order, then we run the risk of creating conflicting judgments: a criminal court judgment and order finding plaintiffs’ deeds to be void *ab initio*, and a civil judgment declaring them to be valid encumbrances. We acknowledge Christopher’s concern in this regard. However, as we explain below, reversal of the judgment is warranted on grounds that are not dependent on judicial notice of the criminal court records. We therefore deny both parties’ requests.

Next, the parties contest whether the court’s posttrial orders in July 2023 are properly treated as a statement of decision. The trial court’s written orders include factual findings and a legal discussion, but they do not constitute a formal statement of decision under Code of Civil Procedure section 632. (*LSREF2 Clover Property 4, LLC v. Festival Retail Fund 1, LP* (2016) 3 Cal.App.5th 1067, 1076 (*LSREF2 Clover Property*); see also Cal. Rule of Court, rule 3.1590). The orders were a tentative decision, and no party subsequently requested a statement of decision.

The lack of a statement of decision in turn affects our standard of review. “When a statement of decision is not issued,

11

the appellate court applies the doctrine of implied findings, meaning that we presume the trial court 'made all factual findings necessary to support the judgment for which substantial evidence exists in the record. In other words, the necessary findings of ultimate facts will be implied and the only issue on appeal is whether the implied findings are supported by substantial evidence.' " (*LSREF2 Clover Property*, *supra*, 3 Cal.App.5th at p. 1076; accord, *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267.)

Substantial evidence review is a deferential standard, but as our Supreme Court has explained, "it is not toothless. It is well settled that the standard is not satisfied simply by pointing to ' "isolated evidence torn from the context of the whole record." ' " (*In re I.C.* (2018) 4 Cal.5th 869, 892; accord, *Lee v. Amazon.com, Inc.* (2022) 76 Cal.App.5th 200, 222.)

In conducting our review, we must assess the whole record to determine if it contains substantial evidence in support of the judgment. Substantial evidence must be of " ' "ponderable legal significance. … It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case." ' " (*Nejadian v. County of Los Angeles* (2019) 40 Cal.App.5th 703, 726.) "Substantial evidence is therefore not merely an appellate incantation designed to conjure up an affirmance. To the contrary, it is essential to the integrity of the judicial process that a judgment be supported by evidence that is at least substantial." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 652 (*Roddenberry*).)

Furthermore, evidentiary inferences "may constitute substantial evidence, but they must be the product of logic and

12

reason." (*Roddenberry, supra*, 44 Cal.App.4th at p. 651.) An inference must be a reasonable conclusion drawn from credible evidence and cannot be based on speculation or conjecture. (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204 (*Beck*).) "[A]n inference cannot stand if it is unreasonable when viewed in light of the whole record." (*Ibid.*)

With this standard in mind, we turn to the merits.

The judgment here quiets title in favor of plaintiffs with respect to their beneficial interests in the Property. The validity of those interests is predicated on Wallace being the lawful successor trustee of the Trust in 2015 when plaintiffs' deeds of trust were created and recorded.

Under the terms of the Trust, Chanie was the named trustee during her lifetime. The Trust specified how a successor trustee was to be determined in the event of Chanie's death, resignation, or inability to serve, and also provided an alternative procedure for Chanie, during her lifetime, to appoint a successor trustee.

Paragraph 3.011 named Chanie's son Otris as the successor trustee in the event Chanie died, resigned, or was otherwise unable to serve. But in the event Otris could not or would not serve, paragraph 3.011 provided that the beneficiaries of the Trust were to designate Chanie's successor, and if they could not agree, then the appointment would be made by a court of competent jurisdiction. When Otris predeceased Chanie, these procedures for choosing a successor trustee were triggered. But the record contains no evidence, let alone substantial evidence, indicating these procedures were followed. Christopher is the only identified beneficiary. The record contains no evidence there

13

are any other beneficiaries. The probate court concluded Christopher is the sole beneficiary, and Christopher testified he was not contacted following his grandmother's death to designate a successor or for any other reason. Nor is there evidence that a court appointed Wallace the successor trustee. Thus, there is no credible, substantial evidence Wallace became the lawful successor trustee in accordance with paragraph 3.011.

Alternatively, paragraph 3.013 gave Chanie the right, *during her lifetime*, to appoint an individual or institution of her choosing to replace her as trustee. In its tentative decision, the trial court relied on this provision to find that Wallace was the lawful successor trustee. In so finding, the trial court said it inferred that Chanie, before she died, must have appointed Wallace to replace her, based on the testimony that Wallace arranged for Winlock to make repairs to the Property, hired Winlock to be the property manager, and made payments on the loans for almost three years. Plaintiffs urge the validity of this argument, but we are not persuaded.

There is no direct evidence that Chanie appointed Wallace, during her lifetime, to be the successor trustee under paragraph 3.013. In fact, the representations made by Wallace in her recorded affidavits directly contradict a finding she was appointed by Chanie prior to her death. Wallace represented in her affidavits that at the time of Chanie's death, Chanie was still the trustee, and held title to the Property *as trustee*. Nothing in the documents executed by Wallace indicates she was asserting her status as successor trustee based on an appointment from Chanie made prior to her death in accordance with paragraph 3.013, but only that she was assuming the role of successor trustee following Chanie's death. There was also no evidence

14

presented that Chanie signed any amendment to the Trust reflecting a decision to appoint a new trustee during her lifetime, and paragraph 2.02 required modifications or amendments to "any of the terms" of the Trust to be memorialized in a writing signed by Chanie.

Moreover, we find the evidentiary inferences cited by the trial court, and argued by plaintiffs, to be insubstantial and insufficient to support a finding that Wallace became the lawful successor trustee under paragraph 3.013. (*Roddenberry*, *supra*, 44 Cal.App.4th at p. 651; *Beck*, *supra*, 44 Cal.App.4th at p. 1204.) Wallace's contacts with Winlock to perform repairs at the Property, and eventually to collect the rental payments, are arguably supportive of a finding that Wallace was assisting with the management of the Property, but it does not logically support a finding that Chanie had appointed Wallace to be in control of her Trust and all of its assets, of which the Property was just one. The fact that Wallace thereafter encumbered the Property and made payments on the loans for a period of time before defaulting adds little to the equation. Other evidence shows that Wallace created a second trust using Chanie's name (albeit with a misspelling), *after* Chanie had passed, and transferred the Property into that trust in which she designated herself the trustee. This evidence undercuts the reasonableness of any inference that Wallace had already been duly appointed the successor trustee by Chanie prior to her death.

In addition, paragraph 3.02 of the Trust, invalidated by the probate court's March 8, 2021 order, also does not support the judgment. Plaintiffs do not attempt to argue that paragraph 3.02 is valid, and concede the trial court did not rely on it. In any event, paragraph 3.02 provides that if the trustee resigns and no

15

successor is appointed, then Wallace was to be the successor trustee.  As we have already explained above, there is no credible evidence Chanie resigned her position as trustee prior to her death, and therefore no basis for paragraph 3.02 to be invoked or to provide a basis for Wallace to be deemed the lawful successor trustee, even assuming the paragraph was valid and enforceable.

In sum, the record contains no substantial, credible evidence that the procedures set forth in the Trust for appointing a successor trustee were followed.  There is therefore no substantial evidentiary support for a finding that Wallace was the lawful successor trustee with the authority to encumber the Property in 2015 or at any other time.

Plaintiffs argue that even if Wallace was not the lawful successor trustee, the judgment in their favor is nonetheless properly affirmed because they are bona fide encumbrancers who acted in good faith and with no knowledge of any wrongdoing by Wallace.  In so arguing, plaintiffs rely on Probate Code sections 18100 and 18100.5 and Civil Code section 3543.

Because there is no substantial evidence Wallace was the lawful successor trustee, Probate Code section 18100 ("Protection of third person dealing with trustee") and section 18100.5 ("Certification of trust") do not apply here.  These statutes apply to protect third parties in their dealings with a duly appointed trustee who acts in excess of his or her authority.  Probate Code section 18100 "protects third parties in all transactions with trustees where both the existence of the trust and the status of the trustees are known, and the third parties rely in good faith on the trustees' representations of the scope of their authority.  Only where third parties have actual knowledge that trustees are exceeding or improperly exercising their powers do the third

16

parties lose this protection." (*Adler v. Manor Healthcare Corp.* (1992) 7 Cal.App.4th 1110, 1116, italics omitted.)

Nothing in the statutory language supports an interpretation that either statute was intended to apply to an individual who was never a trustee. All of the cases cited by plaintiffs involve trustees acting in excess of their authority, not individuals who were never a lawful trustee. We decline to adopt an interpretation of the statutory language that would support application of either Probate Code section 18100 or section 18100.5 on the facts presented here.

Plaintiffs' reliance on Civil Code section 3543 is equally unavailing. Plaintiffs argue, and the trial court apparently agreed, that even if Wallace's actions were unlawful, Chanie's negligence allowed Wallace to engage in fraud. Plaintiffs say that since they are good faith encumbrancers, Christopher is estopped from denying the validity of their beneficial interests because of Chanie's negligence.

It is well settled that while " 'the law protects innocent purchasers and encumbrancers, "that protection extends only to those who obtained good legal title." ' " (*La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 477–478; accord, *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 890 (*WFG National Title*); *Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 44.) However, the doctrine of equitable estoppel or Civil Code section 3543 may be invoked by a bona fide purchaser or encumbrancer, in spite of the general rule that a forged instrument is a nullity. (*WFG National Title*, at p. 892.) In order to invoke Civil Code section 3543, "it must be established that the

17

party to bear the loss was, at a minimum, negligent." (*WFG National Title*, at p. 892.)

Plaintiffs point to Christopher's testimony acknowledging that his grandmother never informed him about the terms of her Trust. They contend Chanie was negligent for failing to do so, that her negligence allowed Wallace to engage in fraud, and that as between them and Christopher, who stands in the shoes of Chanie as successor, he should be estopped to deny the validity of their interests.

We disagree. There is no substantial evidence of negligence or misconduct by Chanie. The evidence shows Chanie did nothing more than fail to tell her grandson about the Trust and his possible role as successor trustee in the event of her death. This omission does not rise to the level of substantial evidence of the type of active negligence found by other courts as supporting application of the doctrine of equitable estoppel generally, or Civil Code section 3543 specifically. (See, e.g., *WFG National Title*, *supra*, 51 Cal.App.5th at pp. 892–893; *Reusche v. California Pacific Title Ins. Co.* (1965) 231 Cal.App.2d 731, 738–739 [property owner's conduct in writing a letter to bank approving of check she knew her agent had forged without making further inquiry of the lender or title company about the transaction "constituted misplaced confidence in her agent" and justified application of estoppel].)

Because substantial evidence does not support the judgment in favor of plaintiffs Boren and CIG, we reverse the judgment entered in their favor on the complaint and direct entry of an order directing they shall take nothing on the complaint. Moreover, as the parties acknowledged in their briefs, the complaint and cross-complaint were essentially mirror images of

18

one another.  We agree, and conclude the evidence discussed above therefore also dictates entry of judgment on the cross-complaint in favor of Christopher.  The only evidence in the record establishes that Wallace never lawfully assumed the role of successor trustee under paragraphs 3.011, 3.013 or 3.02 of the Trust.  The only evidence in the record also demonstrates Boren and CIG cannot prevail as good faith encumbrancers under Probate Code sections 18100 and 18100.5 or Civil Code section 3543.  Based on the evidence presented at trial, Christopher is the lawful successor trustee to the Trust, and we are compelled to conclude he is entitled to entry of judgment on the cross-complaint quieting title in his favor and cancelling the various instruments unlawfully recorded against the Property.

## DISPOSITION

The judgment in favor of plaintiffs Ira Boren, trustee of the Morris Boren Living Trust, and Creative Investment Group, Inc., on their complaint is reversed.  On remand, the superior court is directed to enter judgment on the complaint in favor of defendant Christopher Jordan, individually and as trustee of the Chanie D. Jordan Separate Property Trust.  The superior court is also directed on remand to enter judgment in favor of Christopher Jordan on his cross-complaint for quiet title and cancellation of the various instruments.

Christopher Jordan shall recover his costs of appeal.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


SCHERB, J.

20